22 A.3d 20 (2011)
420 N.J. Super. 427
Frank J. NOSTRAME, Plaintiff-Respondent,
v.
Natividad SANTIAGO; Betsy Santiago; and Mazie, Slater, Katz and Freeman, LLC, Defendants-Appellants.
No. A-2298-10T2.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 2011.
Decided June 10, 2011.
*22 Adam M. Slater, Roseland, argued the cause for appellants (Mazie, Slater, Katz & Freeman, attorneys; Mr. Slater, of counsel and on the briefs).
Frank J. Nostrame, Jersey City, respondent, argued the cause pro se.
Before Judges PARRILLO, YANNOTTI and SKILLMAN.
The opinion of the court was delivered by
SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
The primary issue presented by this appeal is whether an attorney who is discharged by his client and replaced by a successor attorney may maintain an action for tortious interference with contract against the successor attorney. We conclude that in the absence of any allegation that the successor attorney used wrongful means, such as fraud or defamation, to induce the client to discharge the original attorney, such an action is not maintainable.

I.
Plaintiff Frank Nostrame, a New Jersey attorney, was retained by defendant Natividad Santiago on January 18, 2007, to represent her in connection with a proposed medical malpractice action, apparently under a contingent fee agreement. Plaintiff performed certain preliminary work, and on May 23, 2007, he filed a complaint on her behalf.
On May 31, 2007, Santiago entered into a contingent fee retainer agreement with defendant Mazie, Slater, Katz and Freeman, LLC (Mazie Slater), a New Jersey law firm, to represent her in the medical malpractice action. On that day, Santiago sent a letter to plaintiff discharging him as her attorney and directing him to turn over his file to Mazie Slater.
After retaining experts to support Santiago's malpractice claim and engaging in substantial discovery, Mazie Slater settled the claim on her behalf for a total of $1,200,000. Under Mazie Slater's contingent fee agreement with Santiago, this settlement resulted in an attorney's fee of $358,396.31.
Plaintiff asserted a lien of $11,623.75 on that fee for the legal work he performed in connection with Santiago's malpractice action. The trial court eventually determined that plaintiff was entitled to the full amount of his lien. Mazie Slater has now paid plaintiff that amount, which is not at issue in this appeal.
In addition to asserting a lien against the Mazie Slater contingent fee for the services he performed before his discharge, plaintiff brought this tortious interference with contract action against Mazie Slater. Plaintiff's complaint alleged in pertinent part that "Natividad Santiago was induced to discharge plaintiff and dissolve the contingent fee contract between them by [Mazie Slater]." The complaint named not only Mazie Slater but also Santiago, her daughter Betsy Santiago, and fictitious John Does as defendants. The complaint did not include any specific allegation with respect to Betsy Santiago. However, the complaint alleged that unnamed "John Does without legal justification interfered with the contractual relation between Natividad Santiago and plaintiff [by] contact[ing] the office of [Mazie Slater] for the purpose of creating a contractual relation between [Mazie Slater] and Natividad Santiago and to terminate the contractual relation between Natividad Santiago and plaintiff."
Shortly after the filing of this complaint, Mazie Slater filed a motion to dismiss on *23 its own behalf and on behalf of Natividad and Betsy Santiago. Plaintiff submitted a certification in opposition to the motion, which stated in part:
The Complaint alleges facts that, if proven, would establish that Natividad Santiago was induced by defendant and third persons to discharge me and retain Mazie Slater as counsel. . . .
While I am aware of the RPC and related cases holding the right of a client to discharge an attorney and engage another of their choosing, this Complaint alleges that a third person intervened and interfered with that agreement.
The trial court denied defendants' motion to dismiss. We granted defendants' motion for leave to appeal from this denial.
Some confusion was engendered by the fact that Mazie Slater's motion also sought leave to appeal an order in the medical malpractice action that denied its motion to limit the amount of plaintiff's lien to $11,623.75. Our order granting leave to appeal both orders also summarily reversed the order relating to plaintiff's lien. However, we did not rule summarily upon Mazie Slater's appeal from the denial of its motion to dismiss. Mazie Slater apparently failed to understand that this interlocutory appeal was still pending and, as a result, filed a second motion to dismiss in the trial court, which was also denied. Mazie Slater filed a notice of appeal from this order, which was docketed by the clerk of this court and under which this appeal has proceeded. The second motion to dismiss was unnecessary, and in view of the pendency of this interlocutory appeal, the trial court lacked jurisdiction to rule upon it. Consequently, even though it does not affect our consideration of the merits, we view this appeal as solely from the order denying Mazie Slater's first motion to dismiss.

II.
Before considering the maintainability of a claim for tortious interference with contract by a discharged attorney against a successor attorney, we first consider the nature of a contract between an attorney and client. In Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 607 A.2d 142 (1992), the Court concluded that a provision in a law firm partnership agreement that barred withdrawing partners from collecting termination compensation if they continued to represent firm clients was invalid. In reaching this conclusion, the Court stated that "[a] client is always entitled to be represented by counsel of his own choosing," and that an attorney "may do nothing which restricts the right of the client to repose confidence in any counsel of his choice." Id. at 20, 607 A.2d 142 (quoting Dwyer v. Jung, 133 N.J.Super. 343, 346-47, 336 A.2d 498 (Ch. Div.), aff'd, 137 N.J.Super. 135, 348 A.2d 208 (App.Div.1975)). Thus, although a client is liable for the payment of services rendered during the course of an attorney-client relationship, the client is free to discharge the attorney at any time without being subject to suit for breach of contract. See Glick v. Barclays De Zoete Wedd, Inc., 300 N.J.Super. 299, 309, 692 A.2d 1004 (App.Div.1997); Restatement (Third) of the Law Governing Lawyers § 32(1) (2000). A client's freedom to terminate the attorney-client relationship unilaterally means that a contract between an attorney and client is a contract that is "terminable at will." Glick, supra, 300 N.J.Super. at 309, 692 A.2d 1004; see Alex B. Long, The Business of Law & Tortious Interference, 36 St. Mary's L.J. 925, 939-44 (2005).
With this understanding of the nature of a contract between an attorney and client, we turn to the question whether a discharged attorney may maintain an action against a successor attorney for tortious *24 interference with contract. In considering claims for tortious interference with existing or prospective contractual relations, our courts generally follow the principles set forth in the Restatement (Second) of Torts (1979). See MacDougall v. Weichert, 144 N.J. 380, 403-05, 677 A.2d 162 (1996); Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 752-55, 563 A.2d 31 (1989).
The elements of a cause of action for tortious interference with contract are set forth in section 766 of the Restatement, which states:
One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.
A claim for tortious interference with a contract that is terminable at will, such as a contract between attorney and client, falls within section 766. Id. § 766 cmt. g. However, the comments to the Restatement recognize that a determination of the viability of such a claim may require a different analysis than other tortious interference with contract claims, particularly if the defendant is a competitor of the claimant:
One's interest in a contract terminable at will is primarily an interest in future relations between the parties, and he has no legal assurance of them. For this reason, an interference with this interest is closely analogous to interference with prospective contractual relations.. . . If the defendant was a competitor regarding the business involved in the contract, his interference with the contract may be not improper.
[Ibid.]
Section 767 of the Restatement sets forth a series of general factors that a court should consider in determining whether an alleged interference with a contract was improper, which our Supreme Court applied in MacDougall, supra, 144 N.J. at 404-05, 677 A.2d 162. However, those general factors do not need to be addressed if a case falls within one of the "special situations" addressed in sections 768 through 773 of the Restatement. Id. § 767 cmt. a.
One of those special situationsan alleged tortious interference with contract by a competitor seeking to pursue its own economic interests by encouraging a prospective customer to discontinue a terminable at will contract with another partyis addressed by section 768(1) of the Restatement, which states:
One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
(a) the relation concerns a matter involved in the competition between the actor and the other and
(b) the actor does not employ wrongful means and
(c) his action does not create or continue an unlawful restraint of trade and
(d) his purpose is at least in part to advance his interest in competing with the other.
In explaining the application of this section to a competitor's efforts to persuade a party to terminate a terminable at will contract, the comments to the Restatement state:
If the third person is free to terminate his contractual relation with the plaintiff *25 when he chooses, there is still a subsisting contract relation; but any interference with it that induces its termination is primarily an interference with the future relation between the parties, and the plaintiff has no legal assurance of them. As for the future hopes he has no legal right but only an expectancy; and when the contract is terminated by the choice of the third person there is no breach of it. The competitor is therefore free, for his own competitive advantage, to obtain the future benefits for himself by causing the termination. Thus, . . . he may make use of persuasion or other suitable means, all without liability.
[Id. § 768 cmt. i.]
Under the plain terms of section 768(1) of the Restatement, Mazie Slater's alleged inducement of Santiago to discharge plaintiff as her attorney in the medical malpractice action did not constitute a tortious interference with contract. The contract between plaintiff and Santiago "concern[ed] a matter involved in the competition between [Mazie Slater] and [plaintiff]," id. § 768(1)(a), because both Mazie Slater and plaintiff are attorneys who represent clients in medical malpractice actions. Plaintiff's complaint does not allege that Mazie Slater employed any "wrongful means," such as fraud or defamation, see id. § 768 cmt. e, to induce Santiago to discharge him, id. § 768(1)(b), or that Santiago's discharge of him and retention of Mazie Slater would "create or continue an unlawful restraint of trade," id. § 768(1)(c). Moreover, it is undisputed that Mazie Slater's "purpose" in allegedly inducing Santiago to discharge plaintiff was "at least in part to advance [its] interest in competing with [plaintiff.]" Id. § 768(1)(d). Therefore, we conclude that under section 768 of the Restatement, plaintiff's complaint does not state a cause of action against Mazie Slater for tortious interference with contract.
This conclusion is reinforced by the fact that the contractual relationship at issue in this case is a contract between an attorney and client. Whatever interest plaintiff may have had in maintaining his contract with Santiago was outweighed by her interest in exercising her right to select counsel of her own choosing, including her right to discharge plaintiff, and to retain new counsel who she believed could better represent her in the medical malpractice action. See Jacob, supra, 128 N.J. at 18-24, 607 A.2d 142. Our Supreme Court has described a "client's freedom of choice" as a "paramount interest." Id. at 22, 607 A.2d 142. Hence, the courts should not recognize a cause of action for tortious interference with a contract between an attorney and client that could impede that freedom of choice unless the alleged interference involves wrongful means, such as fraud or defamation.
The decisions in other jurisdictions are generally supportive of this conclusion. See, e.g., Storm & Assocs., Ltd. v. Cuculich, 298 Ill.App.3d 1040, 233 Ill.Dec. 101, 700 N.E.2d 202, 210 (1998); Cavicchi v. Koski, 67 Mass.App.Ct. 654, 855 N.E.2d 1137, 1141-44 (2006); Fred Siegel Co. v. Arter & Hadden, 85 Ohio St.3d 171, 707 N.E.2d 853, 860-61 (1999); see generally Phoebe Carter, Liability in Tort for Interference with Attorney-Client Relationship, 90 A.L.R.4th 621, 705-10 (1991). But see Anderson v. Anchor Org. for Health Maint., 274 Ill.App.3d 1001, 211 Ill.Dec. 213, 654 N.E.2d 675, 685-86 (1995).
Plaintiff suggests that even though his complaint does not allege that Mazie Slater used any "wrongful means" to induce Santiago to discharge him and retain Mazie Slater, he should be allowed to conduct discovery to determine whether such wrongful means may have been used. *26 Our courts ordinarily take a liberal view in determining whether a complaint states a cause of action. See Printing Mart, supra, 116 N.J. at 746, 563 A.2d 31. However, New Jersey is a "fact" rather than a "notice" pleading jurisdiction, which means that a plaintiff must allege facts to support his or her claim rather than merely reciting the elements of a cause of action. Id. at 768, 563 A.2d 31; Glass v. Suburban Restoration Co., 317 N.J.Super. 574, 582, 722 A.2d 944 (App.Div.1998); Kotok Bldg. v. Charvine Co., 183 N.J.Super. 101, 104-05, 443 A.2d 260 (Law Div.1981). A plaintiff cannot simply assert that "any essential facts that the court may find lacking can be dredged up in discovery." Printing Mart, supra, 116 N.J. at 768, 563 A.2d 31.
Plaintiff does not allege in either his complaint or his certifications in opposition to Mazie Slater's motion to dismiss that Mazie Slater employed any wrongful means in whatever communications it may have had with Santiago before she discharged plaintiff and retained Mazie Slater. Indeed, plaintiff's certifications, which converted Mazie Slater's motion to dismiss into a motion for summary judgment, R. 4:6-2(e), simply reiterated his complaint's allegations that Mazie Slater "induced" Santiago to discharge him. For all the reasons previously set forth, such an allegation does not state a cause of action for tortious interference with contract by a discharged attorney against a successor attorney.
We also note that permitting discovery to proceed based on the kind of conclusionary allegations contained in plaintiff's complaint could have a chilling effect upon a client's exercise of the right to select counsel of his or her choosing. Plaintiff's complaint joined not only Mazie Slater but also Santiago and her daughter Betsy as defendants. Plaintiff now recognizes that he has no basis for a claim against Natividad Santiago because a party cannot tortiously interfere with his or her own contract. See Printing Mart, supra, 116 N.J. at 752-53, 563 A.2d 31. Nevertheless, plaintiff contends that he needed to join Santiago as a defendant to obtain discovery from her. This contention is obviously incorrect; discovery may be obtained from a person without joining that person as a party. However, the threat of joinder as a defendant or being required to submit to a deposition in this kind of action could deter a client in the position of Santiago from exercising her right to change counsel. Furthermore, the prospect of being sued for tortious interference with contract could cause a potential successor attorney such as Mazie Slater to decline representation of a client previously represented by another attorney, especially in a smaller case, thus interfering with a client's right to seek counsel of his or her choosing. Therefore, the facts alleged in plaintiff's complaint do not provide an adequate legal foundation for him to be allowed to proceed with discovery.

III.
Finally, we consider plaintiff's tortious interference claim against Betsy Santiago. This claim requires only brief discussion. Section 770 of the Restatement states:
One who, charged with responsibility for the welfare of a third person, intentionally causes that person not to perform a contract or enter into a prospective contractual relation with another, does not interfere improperly with the other's relation if the actor
(a) does not employ wrongful means and
(b) acts to protect the welfare of the third person.
*27 This rule "deals with cases in which, by ordinary standards of decent conduct, one is charged with some responsibility for the protection of the welfare of another." Id. § 770 cmt. b. We have no hesitancy concluding that "by ordinary standards of decent conduct" a daughter may encourage her mother to terminate a contract that is terminable at will without being subjected to possible liability for tortious interference with contract, at least in the absence of any allegation that she used wrongful means.
Accordingly, the order denying defendants' motion to dismiss is reversed.