61 A.3d 893

FRANK J. NOSTRAME, PLAINTIFF–APPELLANT, v. NATIVIDAD
SANTIAGO, BETSY SANTIAGO AND MAZIE, SLATER, KATZ
AND FREEMAN, LLC, DEFENDANTS–RESPONDENTS.

Argued January 2, 2013—Decided March 11, 2013.

110

*Frank J. Nostrame* argued the cause pro se.

*Adam M. Slater* argued the cause for respondents (*Mazie Slater Katz & Freeman,* attorneys).

*Shalom D. Stone* argued the cause for amicus curiae New Jersey State Bar Association (*Kevin P. McCann,* President, attor-

ney; *Susan A. Feeney,* Immediate Past President, of counsel; *Mr. Stone, Ms. Feeney,* and *Stacie L. Powers,* on the brief).

Justice HOENS delivered the opinion of the Court.

This appeal arises from a dispute between two attorneys over their successive representation of a client. Plaintiff Frank J. Nostrame, Esq., alleges that defendant Mazie Slater Katz & Freeman, LLC (Mazie Slater), along with another unidentified person, wrongfully induced his client, defendant Natividad Santiago, to discharge him and to be substituted in his place as her counsel. Plaintiff asserts that defendant Mazie Slater thereby engaged in tortious interference with his contractual relationship with his client, making the law firm liable to him in tort. Plaintiff further argues that because his retainer agreement with Santiago was for a contingent fee, defendant's tortious behavior caused him to sustain a substantial loss that he should be entitled to recover from the law firm.

Defendant Mazie Slater contends that because the client always retained the right to be represented by counsel of her choosing, the law firm was free to discuss her case with her and to undertake her representation in plaintiff's place. Mazie Slater further asserts that plaintiff was fully compensated for his representation because he was reimbursed for the expenses he incurred and was paid a fee, based on *quantum meruit,* for the services he performed prior to his discharge.

The factual and procedural context of this dispute presents us with three interrelated questions. First, we consider whether, and under what circumstances, an attorney might have a cause of action against a successor attorney for tortious interference. Second, we address the factual and procedural predicates required for assertion of and prosecution of a claim against a successor attorney sounding in tortious interference. Finally, we address whether, in the circumstances presented in this record, plaintiff should have been afforded the opportunity to file an amended complaint

or to pursue discovery to uncover evidence of wrongdoing needed to pursue his claim.

Our review of the applicable precedents and the ethical constraints that govern the behavior of attorneys leads us to the following conclusions. First, because the right of the client to be represented by counsel of his or her choosing is of paramount importance, there should be no interference with a client's free choice to retain and to discharge any attorney. Second, the ethical rules we have established that govern attorneys in the practice of law include limits on their behavior when seeking to attract clients with which, in all circumstances, they must comply. Third, although an attorney who uses wrongful means, including fraud, misrepresentation, or a violation of these generally applicable ethical rules, in his or her efforts to attract a client has engaged in behavior that would constitute a form of tortious interference, those circumstances will be both rare and so readily apparent that they can and must be specifically pleaded. Finally, the record before this Court falls far short of the rare or unusual circumstances in which such a claim might be cognizable and the pleading lacks any of the specificity that must be included in order to proceed. In light of plaintiff's concession that he has no evidence that could support a tortious interference claim, we reject his application to be permitted to engage in discovery in the hope of finding the requisite factual basis for his claim as both unnecessary and unwarranted.

I.

This dispute arises in the context of a motion to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. *See R.* 4:6–2(e). As a result, we derive the facts from plaintiff's complaint and the exchange of correspondence between counsel in connection with the motion to dismiss, and we recite them in the light most favorable to plaintiff. *Printing Mart–Morristown v. Sharp Elec. Corp.*, 116 *N.J.* 739, 746, 563 *A.*2d 31 (1989).

In October 2006, defendant Natividad Santiago underwent cataract surgery that resulted in a significant injury to her eye. On January 18, 2007, she met with plaintiff to consult with him about the possibility of pursuing a medical malpractice claim that would compensate her for her injuries. Santiago signed a contingent fee agreement in which she retained plaintiff to represent her and she signed authorizations to permit him to obtain copies of her medical records. Plaintiff secured the needed records, engaged in research, and consulted with one or more medical experts. He filed a complaint on Santiago's behalf on May 23, 2007. During this time, Santiago moved to Florida to live with her daughter, Betsy, and plaintiff asserts that he communicated with both of them by telephone to monitor Santiago's medical condition and to keep her apprised of his efforts on her behalf. According to plaintiff, Santiago scheduled an appointment to discuss her case with him on June 1, 2007, and when she failed to appear, he called and spoke with her daughter who could not explain her absence.

That same day, however, plaintiff received a letter from Santiago, dated May 31, 2007, discharging him as her counsel. The letter further instructed plaintiff to turn over Santiago's file to Mazie Slater and requested that plaintiff not contact her because her decision was final. Plaintiff asserts that the letter, which Santiago signed, was drafted by Mazie Slater.

In spite of the direction that he not contact Santiago, plaintiff called and wrote to her, trying to determine why he had been discharged. In a letter, dated June 6, 2007, plaintiff defended his handling of the litigation in response to what he described as Santiago's complaint that he "had done nothing to further [her] case." Santiago forwarded the letter to her new attorney at the Mazie Slater firm, Adam Slater, who directed plaintiff in writing to cease all further contact with Santiago and who demanded that he turn over his file.

Plaintiff and defendant Mazie Slater thereafter engaged in litigation relating to the release of the file and plaintiff's assertion of a lien. That litigation is germane to the issues before this

Court only to the extent that it resulted in an order directing Mazie Slater to pay plaintiff's expenses in the amount of $1,654.06 and preserving plaintiff's lien pending resolution of the underlying malpractice litigation.

Thereafter, Mazie Slater settled Santiago's malpractice suit and filed its motion to discharge plaintiff's lien. Adam Slater certified that a $1,200,000 settlement had been reached which, after payment of expenses, resulted in $358,396.31 in attorneys' fees. The law firm asserted that plaintiff was not entitled to any portion of that fee because he had filed the complaint prematurely and had done little to advance the litigation prior to being discharged. Plaintiff countered with a certification of services describing the work he had performed and asserted that he was entitled to be compensated at an hourly rate equivalent to the one that Slater had used in an earlier filing with the court. At about the same time, plaintiff filed his complaint in this matter, seeking an additional award of damages in the nature of a contingent fee based on his claim that Mazie Slater had tortiously interfered with his contract with defendant Natividad Santiago by inducing her to discharge him.

Faced with these competing and interrelated claims, the trial court concluded that an attorney who is discharged is not entitled to a contingent fee, but instead is permitted to recover a *quantum meruit* award based on the value of services performed before his discharge. *See Glick v. Barclays De Zoete Wedd, Inc.*, 300 *N.J.Super.* 299, 309–10, 692 *A.*2d 1004 (App.Div.1997)(citing *Cohen v. Radio–Elecs. Officers Union*, 146 *N.J.* 140, 679 *A.*2d 1188 (1996)). Applying that framework, the trial court valued plaintiff's lien based on plaintiff's claimed hourly rate and the number of hours he certified he had worked on the file, and awarded him $11,623.75 as his fee. Notwithstanding that reasoning, because of plaintiff's tortious interference complaint, the trial court directed that the balance of the attorneys' fee as calculated in accordance with the contingent fee derived from the settlement reached in the

malpractice action be held in escrow pending resolution of this dispute.

Plaintiff's amended complaint in this matter, filed on February 16, 2010, named Santiago, her daughter Betsy, the Mazie Slater law firm, and ten fictitious John Doe defendants. Plaintiff alleged that Santiago was "induced to discharge plaintiff and dissolve the contingent fee contract between them by defendants, Mazie [Slater], [Betsy] Santiago and another person whose identity is unknown to plaintiff at this time." Mazie Slater moved on behalf of all of the named defendants in lieu of an answer, seeking to dismiss the complaint for failure to state a claim upon which relief can be granted. *R.* 4:6–2(e). In response, plaintiff asserted that because there had been no discovery and therefore no opportunity to develop the facts, defendants' motion should be denied as premature.

Following argument, the trial court denied defendants' motion without prejudice, setting forth its reasons in an oral opinion. The court found that the complaint alleged facts which, if proven, would establish that Santiago was induced to discharge the plaintiff as her counsel. Observing that tortious interference with a contract is a legally cognizable claim and reasoning that the claim could be asserted in the circumstances identified by plaintiff, the trial court decided that plaintiff should be afforded an opportunity to conduct discovery prior to consideration of defendants' dismissal motion. Because discovery had not commenced, the trial court concluded that the motion was premature and denied it without prejudice.

The Appellate Division granted defendants' motion for leave to appeal and, in a published opinion, reversed the order of the trial court and dismissed plaintiff's complaint with prejudice. *Nostrame v. Santiago,* 420 *N.J.Super.* 427, 430, 22 *A.*3d 20 (App.Div. 2011). The panel concluded that "in the absence of any allegation that the successor attorney used wrongful means, such as fraud or defamation, to induce the client to discharge the original attorney,

... an action [for tortious interference] is not maintainable." *Ibid.*

In reaching that conclusion, the Appellate Division determined that because clients are free to discharge their attorneys at any time, "a contract between an attorney and client is a contract that is 'terminable at will.'" *Id.* at 432, 22 *A.*3d 20 (quoting *Glick, supra,* 300 *N.J.Super.* at 309, 692 *A.*2d 1004). Turning to general principles of tortious interference with contract, *id.* at 433, 22 *A.*3d 20 (citing *Restatement (Second) of Torts* § 766 (1979)), the panel likened the situation to one in which "a competitor seek[s] to pursue its own economic interests by encouraging a prospective customer to discontinue a terminable at will contract with another party[,]" *id.* at 434, 22 *A.*3d 20 (citing *Restatement (Second) of Torts* § 768(1)). In the panel's view, in that circumstance "[t]he competitor is ... free, for his own competitive advantage, to obtain the future benefits for himself by causing the termination[,]" unless the interference involves "wrongful means." *Ibid.* (quoting *Restatement (Second) of Torts* § 768 comment i).

Using this standard, the Appellate Division concluded that plaintiff's failure to "allege that Mazie Slater employed any 'wrongful means,' such as fraud or defamation," was fatal to his claim. *Id.* at 434–35, 22 *A.*3d 20 (quoting *Restatement (Second) of Torts* § 768 comment e). In directing that the complaint against Mazie Slater be dismissed with prejudice, the appellate court noted that the factual allegations were conclusory and declined to permit discovery to proceed because of the potential for creating "a chilling effect upon a client's exercise of the right to select counsel of his or her choosing." *Id.* at 436, 22 *A.*3d 20.

As part of its decision, the Appellate Division dismissed plaintiff's claims against the other defendants. *Id.* at 436–37, 22 *A.*3d 20. The court first commented that there could be no claim against Natividad Santiago because she could not tortiously interfere with her own contract. *Id.* at 436, 22 *A.*3d 20 (citing *Printing Mart, supra,* 116 *N.J.* at 752–53, 563 *A.*2d 31). It then rejected plaintiff's allegations against Betsy Santiago as meritless because

" 'by ordinary standards of decent conduct[,]' a daughter may encourage her mother to terminate a contract that is terminable at will without being subjected to possible liability for tortious interference with contract, at least in the absence of any allegation that she used wrongful means." *Id.* at 437, 22 *A.*3d 20 (quoting *Restatement (Second) of Torts* § 770 comment b).

This Court granted plaintiff's petition for certification, 208 *N.J.* 599, 34 *A.*3d 780 (2011), and we thereafter granted amicus curiae status to the New Jersey State Bar Association (NJSBA).

## II.

Plaintiff urges us to reverse the judgment of the Appellate Division, offering three arguments. First, plaintiff asserts that the Appellate Division erred in dismissing his complaint with prejudice before he was given the opportunity to conduct discovery. In his view, the Appellate Division added "wrongful means" to the traditional elements of a cause of action sounding in tortious interference. He reasons that he should have been afforded the opportunity to pursue discovery and thereafter to amend his complaint to aver facts sufficient to state a claim under this new test.

Second, plaintiff contends that the Appellate Division erred in concluding that he could not maintain a claim of tortious interference absent evidence showing that Mazie Slater committed a wrongful act such as fraud or defamation. In particular, plaintiff asserts that this added requirement arose from the appellate panel's analytical error of comparing retainer agreements between attorneys and clients to ordinary commercial contracts that are governed by the principles identified in the *Restatement.* Plaintiff contends that, unlike ordinary commercial competitors, attorneys are precluded from interfering with established attorney-client relationships by the *Rules of Professional Conduct (RPCs)* and that the appellate panel erred by failing to consider the mandates of the *RPCs.*

Finally, plaintiff argues that the Appellate Division overlooked comments made by Adam Slater during oral argument before the trial court that demonstrate that Mazie Slater violated the *RPCs* when it pursued Santiago as a client. In particular, he asserts that Mazie Slater violated the *RPCs* by speaking to Santiago when they knew that she was already represented, *see RPC* 4.2, and that Slater's comments during oral argument about what he would be "allowed to say" to Santiago created the possibility that he had committed an ethical infraction, *see RPC* 7.1, 7.3. Arguing that a violation of these ethical rules is sufficient to constitute "wrongful means" even under the Appellate Division's new standard, plaintiff urges this Court, at a minimum, to permit him to amend his complaint and proceed with his claim.

Mazie Slater, on behalf of itself and the other defendants, counters with three arguments. First, defendants contend that it was appropriate to dismiss plaintiff's complaint with prejudice because he conceded that he had no basis on which to allege fraud, defamation, or other wrongful conduct.

Second, defendants argue that the Appellate Division's decision is consistent with this Court's determination that, for sound public policy reasons, attorneys are directed to " 'do nothing which restricts the right of the client to repose confidence in any counsel of his choice.' " *Jacob v. Norris, McLaughlin & Marcus,* 128 *N.J.* 10, 20, 607 *A.*2d 142 (1992) (quoting *Dwyer v. Jung,* 133 *N.J.Super.* 343, 347, 336 *A.*2d 498 (Ch.Div.), *aff'd,* 137 *N.J.Super.* 135, 348 *A.*2d 208 (App.Div.1975)). Accordingly, defendants reason that plaintiff's allegations that Mazie Slater induced Santiago to terminate her retainer agreement with plaintiff should be "barred as a matter of law since the 'practical effect' of allowing the claim to proceed creates . . . a significant financial disincentive that penalizes an attorney for accepting the case of a plaintiff who wishes to fire its current counsel and retain new counsel."

Finally, Mazie Slater urges us to concur with the Appellate Division that plaintiff's claims against defendants Natividad and Betsy Santiago should be barred as a matter of law.

Amicus NJSBA's central argument is that discharged attorneys should not be permitted to recover damages for services the attorney expected to perform. Amicus NJSBA urges us to reiterate that a discharged attorney is limited to recovering the *quantum meruit* value of the legal services he or she had already performed prior to the discharge. As part of this argument, amicus NJSBA warns that permitting a claim like plaintiff's to proceed would "have a chilling effect on the client's fundamental right to choose and [to] discharge" an attorney. Amicus NJSBA argues that sound policy reasons militate against permitting a discharged attorney to pursue a tortious interference claim, contending that it would dissuade attorneys from representing clients who have discharged prior counsel in order to avoid being sued; would deter clients from exercising their right to discharge counsel to avoid being embroiled in ensuing disputes between counsel; and would intrude upon the attorney-client privilege because it would require disclosure of privileged conversations between the client and the successor attorney in the litigation that would follow.

Although arguing that we should affirm the dismissal of plaintiff's claim in this matter, amicus NJSBA also asks us to conclude, as did the Appellate Division, that an attorney in theory could sustain such a cause of action, if the alleged interference involved wrongful means. Finally, amicus NJSBA urges us to expand the scope of wrongful means that could demonstrate tortious interference by adding violations of the *RPCs* to the traditional means of fraud or defamation recognized by the Appellate Division.

## III.

This appeal requires us to first address whether, and under what circumstances, a discharged attorney might be able to sustain a cause of action sounding in tortious interference against a successor attorney. Our resolution of this question rests on a consideration of fundamental principles governing the attorney-client relationship and traditional concepts of tort and contract.

As we have held, "[a] client is always entitled to be represented by counsel of his own choosing[,]" and an attorney " 'may do nothing which restricts the right of the client to repose confidence in any counsel of his choice.' " *Jacob, supra,* 128 *N.J.* at 20, 607 *A.*2d 142 (quoting *Dwyer, supra,* 133 *N.J.Super.* at 346, 336 *A.*2d 498). Indeed, the client is free to discharge the attorney at any time, without being subject to suit for breach of contract, because the agreement between an attorney and client is a contract that is terminable at will. *See Glick, supra,* 300 *N.J.Super.* at 309, 692 *A.*2d 1004. Because the client is free to terminate the attorney-client relationship unilaterally and at any time, *see Cohen, supra,* 146 *N.J.* at 157, 679 *A.*2d 1188, there are unavoidable implications for an evaluation of the rights, if any, that a discharged attorney might have against another who takes over the representation of that client.

The recognized family of business torts includes both claims for tortious interference with a contract, *see Restatement (Second) of Torts* § 766, and claims for tortious interference with a prospective contractual relationship, *see id.* § 766B. Although plaintiff characterized his claim as sounding in tortious interference with a contract, because the contract between an attorney and client is terminable at will, another attorney's interference with it must technically be analyzed in accordance with the principles governing the latter variety of tort. *See id.* § 766 comment g (explaining that "interest in a contract terminable at will is primarily an interest in future relations between the parties, and ... is closely analogous to interference with prospective contractual relations").

We need not delve deeply into the differences between the two torts nor need we recite all of the proof elements that are ordinarily required to sustain a cause of action based on either tort because the dispute before us is narrowly circumscribed. Relevant to this appeal, both of these torts have as their focus the means by which one has interfered with the contractual relationship, whether that contractual relationship is existing or prospective. In either circumstance, liability rests upon whether the

interfering act is intentional and improper. *See, e.g., id.* §§ 766, 766B.

Thus, the general rule defining the elements of tortious interference with an existing contract is:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

[*Id.* § 766.]

Likewise, when considering the related concept of tortious interference with a prospective contractual relationship, the elements are:

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

[*Id.* § 766B.]

In determining whether the conduct complained of is improper, the *Restatement* offers general guidance, identifying a variety of relevant considerations. *See id.* § 767. Those considerations include an evaluation of the nature of and motive behind the conduct, the interests advanced and interfered with, societal interests that bear on the rights of each party, the proximate relationship between the conduct and the interference, and the relationship between the parties. *Ibid.* As we have explained, these considerations are expressed as a balancing test for courts to apply in evaluating whether an act of interference is improper. *MacDougall v. Weichert,* 144 *N.J.* 380, 404–05, 677 *A.*2d 162 (1996).

In its consideration of the question presented, the Appellate Division placed particular emphasis on the provision of the *Restatement* that suggests that there is a different rule to be applied

to circumstances in which the parties are competitors. That section provides:

One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

[*Restatement (Second) of Torts* § 768(1).]

As one of the comments to this section further explains, these principles are especially relevant when the competitor takes steps to induce one who is a party to a contract terminable at will to terminate that contractual relationship:

If the third person is free to terminate his contractual relation with the plaintiff when he chooses, there is still a subsisting contract relation; but any interference with it that induces its termination is primarily an interference with the future relation between the parties, and the plaintiff has no legal assurance of them. As for the future hopes he has no legal right but only an expectancy; and when the contract is terminated by the choice of the third person there is no breach of it. The competitor is therefore free, for his own competitive advantage, to obtain the future benefits for himself by causing the termination. Thus ... he may make use of persuasion or other suitable means, all without liability.

[*Id.* § 768 comment i.]

Underlying all of these sections of the *Restatement*, including those that address relationships between competitors and that consider the implications of a contract terminable at will, however, is a recognition that the one who acts to induce another is not free to do so by any means whatsoever. Regardless of whether the focus is on an existing contract, a contract terminable at will, or a purely prospective contractual relationship, the means utilized may be neither improper, *see id.* §§ 766, 766B, 768, nor wrongful, *id.* § 768(1)(b).

The issue, then, in the context of successive attorneys, turns on our evaluation of what means are improper or wrongful. The Appellate Division, relying on comments to the *Restatement*,

referred to fraud and defamation as examples of wrongful means, *see Nostrame, supra,* 420 *N.J.Super.* at 434–35, 22 *A.*3d 20, but the parties before this Court dispute whether there are other means that similarly would be characterized as improper or wrongful when the actor is an attorney.

There can be no doubt that inducing another to end a contractual relationship through acts that amount to fraud or defamation would be wrongful. But even in the context of ordinary business competitors, our understanding of wrongfulness has been broadened beyond these traditional categories. Our Appellate Division, for example, has recognized that deceit and misrepresentation can constitute wrongful means. *See Shebar v. Sanyo Bus. Sys. Corp.,* 218 *N.J.Super.* 111, 118, 526 *A.*2d 1144 (App.Div.1987) (holding that using deceit to prevent employee from accepting alternate employment while planning to terminate him would be actionable), *aff'd,* 111 *N.J.* 276, 544 *A.*2d 377 (1988). Similarly, our courts have concluded that "violence, fraud, intimidation, misrepresentation, criminal or civil threats, and/or violations of the law" are among the kinds of conduct that would be considered to be "wrongful means." *E Z Sockets, Inc. v. Brighton–Best Socket Screw Mfg. Inc.,* 307 *N.J.Super.* 546, 559, 704 *A.*2d 1364 (Ch.Div.1996), *aff'd,* 307 *N.J.Super.* 438, 704 *A.*2d 1309 (App.Div.1997). On the other hand, lesser sorts of behavior have been found to fall short of constituting wrongful means in the ordinary business context. *See Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.,* 282 *N.J.Super.* 140, 205–06, 659 *A.*2d 904 (App.Div.) (holding that "vigorous" solicitation of competitor company's customers was not wrongful), *certif. denied,* 141 *N.J.* 99, 660 *A.*2d 1197 (1995); *C.R. Bard, Inc. v. Wordtronics Corp.,* 235 *N.J.Super.* 168, 174, 561 *A.*2d 694 (Law Div.1989) (holding that "sneaky" or "underhanded" acts are not "wrongful means").

The behaviors that have been identified as wrongful means would support a cause of action in general and there is nothing that insulates attorneys from being liable if they use such means in pursuing clients. In the unique context of attorneys, however,

there are other acts that could also be considered to be wrongful means. Attorneys are not competitors for business in the ordinary sense of that term or as that term is used in the *Restatement*. On the contrary, their behavior is governed by our *RPCs*, some of which bear directly on the behavior in which they may and may not engage when seeking to attract clients.

Attorneys may not "make false or misleading communications about the lawyer, the lawyers' services, or any matter in which the lawyer has or seeks a professional involvement." *RPC* 7.1(a). They may not "create an unjustified expectation about results[,]" *RPC* 7.1(a)(2), or, except in defined circumstances, compare their services with those of other lawyers, *RPC* 7.1(a)(3). In advertising their services, attorneys face additional limitations and prohibitions that serve the goal of keeping their communications "predominantly informational." *See RPC* 7.2.

Attorneys are also bound by ethical strictures in their personal contacts with prospective clients. *See RPC* 7.3. Communications with prospective clients are generally permitted, *see RPC* 7.3(a), and plaintiff's argument that they are barred by *RPC* 4.2 fails to recognize that *RPC* 4.2 prohibits communication when the attorney and the client stand in essentially adversarial positions. Although that prohibition is irrelevant to this dispute, in the context of an attorney's communications with prospective clients in general there are many limitations imposed on the content and timing of such contacts. *See, e.g., RPC* 7.3(b)(1) (prohibiting contact with persons whose physical, mental or emotional state interferes with exercise of judgment); *RPC* 7.3(b)(3) (prohibiting communications that involve "coercion, duress or harassment"); *RPC* 7.3(b)(4) (governing timing of contact with victims of mass disasters). Attorneys, moreover, are limited in their communications relating to their fields of practice, designations and certifications, *RPC* 7.4, and even in their behavior relating to their firm name and letterhead, *RPC* 7.5.

Unlike the relatively confined circumstances in which, at least under the *Restatement*, ordinary business competitors would be

found to have engaged in improper or wrongful means, our supervisory authority over attorneys, as expressed in the *RPCs*, creates a further series of limitations that bear upon whether an attorney who approaches a client already represented might be found to have utilized improper or wrongful means. It is not simply that they are prohibited from making statements about another attorney that are defamatory or that amount to fraud. Rather, they may not make misrepresentations, may not use tactics to pressure or harass, may not, except in defined circumstances, make comparisons, may not disparage other attorneys, and may not offer promises about results. Just as Mazie Slater argues that permitting plaintiff's claim to proceed would interfere with Santiago's right to repose confidence in their firm as her attorneys, so, too, must they abide by their ethical obligations lest they do likewise to Santiago's relationship with plaintiff.

Competition among attorneys for clients is a part of the practice of law. Striking the balance between competition that abides within the bounds set forth by the ethical strictures of the *RPCs* and that which does not requires careful consideration. In the end, a lawyer who improperly or wrongfully interferes with the attorney-client relationship of another will have more to fear than a lawsuit by his predecessor; he or she will likely be in violation of our ethical rules as well.

## IV.

With these principles as our guide, we consider the questions presented by this appeal. First, the complaint's assertions that the client failed to appear for a meeting, discharged her attorney, asked that her file be transferred, and directed that the former lawyer not contact her, fall well short of identifying the sort of wrongful means that would give rise to a cognizable claim for tortious interference. Those, however, were the only facts known to plaintiff when he filed his complaint.

Second, even applying the generous standard used in addressing a motion to dismiss for failure to state a claim upon

which relief can be granted, *R.* 4:6–2(e), this pleading fails. Such motions are judged by determining "whether a cause of action is 'suggested' by the facts." *Printing Mart, supra,* 116 *N.J.* at 746, 563 *A.*2d 31 (quoting *Velantzas v. Colgate–Palmolive Co.,* 109 *N.J.* 189, 192, 536 *A.*2d 237 (1988)). Although the "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint[,]" *ibid.* (citing *Rieder v. Dep't of Transp.,* 221 *N.J.Super.* 547, 552, 535 *A.*2d 512 (App.Div.1987)), "a reviewing court 'searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary[,]'" *ibid.* (quoting *Di Cristofaro v. Laurel Grove Mem'l Park,* 43 *N.J.Super.* 244, 252, 128 *A.*2d 281 (App.Div.1957)).

In *Printing Mart,* this Court reversed the dismissal of a plaintiff's claim for intentional interference with a prospective contractual relationship and declared that we intended to

[s]ignal to trial courts to approach with great caution applications for dismissal under *Rule* 4:6–2(e) for failure of a complaint to state a claim on which relief may be granted. We have sought to make clear that such motions, almost always brought at the very earliest stage of the litigation, should be granted in only the rarest of instances. If a complaint must be dismissed after it has been accorded the kind of meticulous and indulgent examination counseled in this opinion, then, barring any other impediment such as a statute of limitations, the dismissal should be without prejudice to a plaintiff's filing of an amended complaint.

[*Id.* at 771–72, 563 *A.*2d 31.]

Even applying that generous approach, plaintiff's complaint asserted merely that he had a contingent fee agreement with a client, that she arranged for a meeting, that she did not appear, and that she thereafter discharged him, asking him to send her file to the lawyers she had retained in his place and directing that he not contact her further. Although plaintiff urges us to glean from that series of events that Mazie Slater induced the client to discharge him, perhaps aided by another unknown person, plaintiff's complaint did not assert, and he cannot point to any fact that suggests, that the means employed were improper or wrongful.

Third, although we are well aware of our admonition in *Printing Mart* that dismissals pursuant to *Rule* 4:6–2(e) should ordinarily be without prejudice and that plaintiffs generally should be permitted to file an amended complaint to cure the defects in their pleading, we find no warrant for such relief here. Contrary to plaintiff's argument before this Court, the Appellate Division did not add a new element to the cause of action for tortious interference. The traditional articulation of that claim has always included the element of improper or wrongful means. Because this complaint lacked any suggestion about the means, its factual assertions were insufficient on their face to state a claim for tortious interference. Moreover, plaintiff conceded that he had no further facts to plead, instead filing the complaint in the hope that he could use the tools of discovery to uncover evidence of wrong-doing. In that context, dismissal with prejudice was entirely appropriate lest his former client and her newly-chosen attorney be subjected to a mere fishing expedition, a remedy that would raise the specter of chilling any client's exercise of the free choice to select counsel that we have accorded them.

Nor do we find that the comments Slater made at oral argument before the trial court expressing a view about what an attorney would be "allowed to say" to a prospective client are sufficient to permit plaintiff to pursue discovery about the way in which Santiago came to discharge him and retain Mazie Slater in his place. Taken out of context, some of those comments tread close to what the *RPCs* prohibit, but we find no ground in this record to conclude that they were explanations about behavior in which defendants actually engaged or that they raise the likelihood that defendants utilized wrongful means.

Our analysis of the well-established elements that are required to state a claim for tortious interference is informed by our recognition that the attorney-client relationship is terminable at will and by our strong protections for clients who exercise their free will to retain and to discharge counsel. It is further guided by the recognition that competition among attorneys, although not

precisely the same as competition found in other business pursuits, is not prohibited as long as it is conducted in adherence to the *RPCs* and is not otherwise wrongful or improper. In that context, we are confident that there will be only rare circumstances in which an attorney will behave in a manner that could translate into a claim by another attorney for tortious interference.

In light of the limited circumstances that we have identified in which such a claim, although theoretically available, could occur, we decline to direct that the dismissal of this complaint be transformed into a dismissal without prejudice for a further reason. Our analysis of the universe of behaviors that would qualify as improper or wrongful includes certain claims that our rules demand be pleaded with specificity, such as fraud. *R.* 4:5–8(a); *see State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.,* 387 *N.J.Super.* 469, 484–86, 904 *A.*2d 775 (App.Div.2006). Moreover, the acts that we have concluded would amount to wrongful means in the context of competition between attorneys for clients also include behavior that would violate one of the *RPCs* that we have identified.

Because each of these grounds is specific and particular, because we recognize that the paramount right to be protected is the right of the client to choose counsel freely, and because we do not intend to countenance litigation between successive counsel that is unsupported by facts known at the time of filing, we direct that any complaint filed in the future based on such a cause of action plead the facts and circumstances that constitute the allegedly wrongful means with specificity and particularity. Because plaintiff's complaint is based on nothing more than his unsupported suspicion that his client would not have discharged him absent some wrongful or improper means, it fails to state a claim upon which relief can be granted.

## V.

The judgment of the Appellate Division is affirmed as modified.

Chief Justice RABNER, Justices LaVECCHIA and ALBIN, and Judges RODRIGUEZ and CUFF (both temporarily assigned) join in Justice HOENS's opinion. JUSTICE PATTERSON did not participate.

*For affirmance as modification*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, RODRIGUEZ (t/a) and CUFF (t/a)—6.