**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1278-25

JOHNSON GMC CADILLAC,
INC., CHRISTOPHER
MCDONALD, ANNE ESKOW,
and JASON PALECCO,

      Plaintiffs-Appellants,

v.

EDWIN B. MINCHIN, III,

      Defendant-Respondent.

_____

Submitted March 25, 2026 – Decided April 20, 2026

Before Judges Mayer, Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Docket No. L-0324-25.

Lavery, Selvaggi & Cohen, attorneys for appellants (William H. Pandos, of counsel and on the briefs).

Edwin B. Minchin, III, self-represented respondent.

PER CURIAM

Plaintiffs Johnson GMC Cadillac, Inc. (Johnson), Christopher McDonald, Anne Eskow, and Jason Palecco appeal from a December 15, 2025 trial court order denying their motion to dismiss various counterclaims asserted by defendant Edwin B. Minchin, III (Minchin) and to compel arbitration of the remainder of Minchin's counterclaims. Conducting a de novo review and applying well-established law, we vacate the court's order and remand for the trial court to transfer all of the parties' claims to arbitration and stay the matter pending the arbitration.

I.

We glean the facts and procedural history from the motion record. On August 25, 2025, plaintiffs filed a verified complaint against Minchin. Plaintiffs alleged that in March 2024, Minchin decided to purchase a 2021 Cadillac model CT4 from Johnson.

As part of the sales transaction, Johnson and Minchin executed an Order Contract. The contract states:

> AGREEMENT TO ARBITRATE ALL CLAIMS. . . . .
> The parties to this agreement agree to arbitrate all claims, disputes, or controversies, including all statutory claims and any state or federal claims ("claims"), that may arise out of or relating to this agreement and the sale or lease identified in this agreement. . . . In the event that any claims are based on a lease, finance, or other agreement between the

2

parties related to this sale or lease as well as this agreement, and if such lease, finance or other agreement contains a provision for arbitration of claims which conflicts with or is inconsistent with this arbitration provision, the terms of such other arbitration provision shall govern and control.

[(Boldface omitted).]

In addition, Johnson and Minchin executed a "Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision)" (Installment Contract). (Capitalization modified). The Installment Contract provision states: "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION." (Boldface omitted). It further provides:

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this [v]ehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Plaintiffs alleged that during the purchase process, Minchin interacted multiple times with the individually named plaintiffs. Before delivering the

3

vehicle, Johnson "agreed to fix a minor cosmetic issue" and "a separate issue affecting the suspension, . . . at no charge to" Minchin. Minchin "grew impatient and frustrated" with the repairs and, on or about April 30, 2024, "requested to cancel the contract for the sale of the vehicle." Johnson agreed and refunded Minchin his down payment.

Plaintiff alleged the "parties were made whole . . . with respect to the purchase of the vehicle" and "had no further business dealings with" one another. Nevertheless, Minchin "engage[d] in a malicious campaign to destroy the reputations of . . . [p]laintiffs" and "wrongfully inflict as much damage upon the business as possible." Plaintiff contended "in or about July 2025, [Minchin] registered the internet domain name 'badcadillac.com' ('[w]ebsite') and . . . posted a malicious, false, and vile manifesto about . . . [p]laintiffs." (Boldface omitted). In addition, plaintiffs alleged Minchin referred to the individual plaintiffs by "viciously derogatory terms." Moreover, Minchin had "been handing out business cards to people in the automotive industry, and elsewhere, urging them to visit his vile [w]ebsite defaming [p]laintiffs."

Plaintiffs' five-count complaint alleged defamation, defamation by republication, tortious interference with business relations, injunctive relief, and civil conspiracy. Plaintiffs' attorney certified the "matter is not presently the

4

subject . . . of a pending arbitration proceeding. Further, no other . . . arbitration proceeding is being contemplated at this time."

On September 4, 2025, Minchin filed an answer to the complaint denying the allegations and asserting various affirmative defenses. Minchin certified the "matter is not the subject of any . . . arbitration proceeding." In addition, Minchin asserted nineteen counterclaims. Plaintiffs' moved to dismiss counterclaims one (violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -233), four (common law fraud), seven (Civil Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1(c)), nine (defamation), twelve (abuse of process/Strategic Lawsuit Against Public Participation, N.J.S.A. 2A:53A-49 to -61), and fourteen (class action).

On October 9, 2025, plaintiffs moved to compel arbitration and to dismiss, under Rule 4:6-2(e), defendant's aforementioned counterclaims. The court heard the parties' arguments on November 6. Minchin opposed the motion, arguing "there [wa]s no valid arbitration agreement," relying on Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430 (2014), and plaintiffs waived their right to arbitration, relying on Cole v. Jersey City Medical Center, 215 N.J. 265 (2013).

A-1278-25

On December 15, 2025, in a written statement of reasons, the court addressed plaintiffs' motion. The court identified the following reasons for denying plaintiffs' motion to compel arbitration: (1) "plaintiffs' conduct constitutes [a] knowing and intentional waiver of their arbitration rights"; (2) arbitration was "not limited to disputes arising specifically from the sales contract; instead, it applies broadly to any dispute between the parties"; and (3) public policy barred arbitration of Minchin's counterclaims because he invoked "significant public-interest statutes designed to protect the public and deter systemic consumer fraud and deception."

In addition, the court found "dismissal of [Minchin]'s counterclaims . . . [wa]s not warranted at this juncture." Instead, "[r]eviewing the pleadings and counterclaims in depth and with liberality, [it] determine[d] that [Minchin] ha[d] suggested causes of action under consumer statutes, contract theories, common law, and constitutional grounds that, if proven, may entitle him to relief."

The court recognized "heightened pleading standards require particularity in fraud-based claims, [but] at this stage [it wa]s concerned only with the legal sufficiency of alleged facts apparent on the face of the challenged counterclaim." In this regard, the court found Minchin "ha[d] incorporated factual allegations regarding the vehicle purchase, alleged defects, course of dealings, refund, and

A-1278-25

subsequent adverse actions that, when viewed in the most favorable light, suggest the potential for relief." In addition, "[c]laims such as protected speech, public interest in deceptive practices, and retaliation further sufficiently plead matters of public concern for which discovery will clarify actionable status."

## II.

On appeal, plaintiffs argue the court erred in denying their motion to compel arbitration of select counterclaims. Plaintiffs assert "the [t]rial [c]ourt did not find the operative arbitration clauses to be invalid."[1] Nevertheless, plaintiffs contend the court erred in finding they waived their rights to arbitration; misread the Installment Contract as imposing a mandatory obligation to arbitrate "all disputes ever existing between the [p]arties" rather than the more "permissive" scope provided in the language (emphasis omitted);

---

[1] In his brief, Minchin states "[e]ven if [plaintiff]s had not waived their rights, it is questionable whether a valid, enforceable agreement to arbitrate . . . exists." Although Minchin made the argument before the trial court in opposition to plaintiffs' motion, he did not file a cross-appeal regarding the issue. The New Jersey Supreme Court has "held that a party, in order to attack the actions below which were adverse to him, must pursue a cross-appeal." Franklin Disc. Co. v. Ford, 27 N.J. 473, 491 (1958); see also Burbridge v. Paschal, 239 N.J. Super. 139, 152 (App. Div. 1990) ("In the absence of a cross-appeal by either [party] . . . the Court noted that it 'left in place' that portion of the trial judgment not subject of the appeal."). Because Minchin did not file a cross-appeal, we decline to consider the argument here.

A-1278-25

and misapplied public policy to "exclude consumer fraud type claims from arbitration."

As to the motion to dismiss, plaintiffs argue the court failed to fulfill is obligation under Rule 1:7-4,[2] because the court provided a "blanket[]" review, without an analysis of "the elements of each challenged" counterclaim, and "acknowledged . . . a heightened pleading standard [for fraud allegations,] but failed to explain how exactly the [c]ounterclaim satisfies th[e] burden."

"The interpretation and construction of a contract is a matter of law for the trial court, subject to de novo review on appeal." Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016). "'It is well-settled that [c]ourts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" Serico v. Rothberg, 234 N.J. 168, 178 (2018) (alteration in original) (quoting In re County of Atlantic, 230 N.J. 237, 254 (2017)) (internal quotation marks omitted). "A reviewing court must consider contractual language in the context of the circumstances at the time of drafting and . . . apply a rational meaning in keeping with the expressed general purpose.

---

[2] The Rule provides: "The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law . . . on every motion decided by a written order that is appealable as of right." R. 1:7-4(a).

A-1278-25

[I]f the contract into which the parties have entered is clear, then it must be enforced as written." Ibid. (alteration and omission in original) (quoting Atlantic, 230 N.J. at 254-55). "Contracts should be read 'as a whole in a fair and common sense manner.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009)).

The court's "task [i]s 'not to rewrite a contract for the parties better than or different from the one they wrote for themselves.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)). A court has no authority "to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 560 (App. Div. 2007) (quoting Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc., 249 N.J. Super. 487, 493 (App. Div. 1991)). Moreover, a court may not "remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other." Ibid. (quoting Karl's Sales & Serv., 249 N.J. Super. at 493).

"The existence of a valid and enforceable arbitration agreement poses a question of law" requiring the Appellate Division's de novo review. Barr v.

9

Bishop Rosen & Co., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)).

"Although the public policy of this State is to favor arbitration as a means of settling disputes which otherwise would go to court, it is equally true that the duty to arbitrate, and the scope of the arbitration, are dependent solely on the parties' agreement." Cohen v. Allstate Ins. Co., 231 N.J. Super. 97, 100-01 (App. Div. 1989) (citation omitted). "The parties may shape their arbitration in any form they choose and may include whatever provisions they wish to limit its scope." Id. at 101. "In determining whether a particular dispute is encompassed by an arbitration provision, as in construing any other contractual provision, a court's 'goal is to discover the intention of the parties[,]' which requires consideration of the 'contractual terms, the surrounding circumstances, and the purpose of the contract.'" Angrisani v. Fin. Tech. Ventures, L.P., 402 N.J. Super. 138, 149 (App. Div. 2008) (alteration in original) (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)).

Nevertheless, "[i]t is firmly established . . . that '[b]ecause of the favored status afforded to arbitration, [a]n agreement to arbitrate should be read liberally in favor of arbitration.'" Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010) (all but first alteration in original) (quoting Garfinkel

A-1278-25

v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132 (2001)) (internal quotation marks omitted).  Thus, "courts operate under a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  Ibid. (quoting EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc., 410 N.J. Super. 453, 471 (App. Div. 2009)), overruled in part on other grounds by Hirsch, 215 N.J. at 192-93 (2013) (internal quotation marks omitted).

"When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry:  (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement."  Wollen v. Gulf Stream Restoration and Cleaning, LLC, 468 N.J. Super. 483, 497 (App. Div. 2021).  "[W]hen the parties' contract delegates the question of the arbitrability of a particular dispute to an arbitrator, a court may not override the contract."  Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 211 (2019) (citing Henry Schein, Inc. v. Archer & White Sales, Inc., 568 U.S. 63, 68 (2019)).

Applying this well-established law, we conclude the trial court overstepped in its analysis.  The parties agreed that issues "including the

interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim of dispute . . . shall . . . be resolved by neutral, binding arbitration and not by a court action." The court impermissibly ventured into these areas when it rendered its decision. Because the parties contractually agreed these issues were to be resolved in arbitration, the court should have transferred the matter, in its entirety, to arbitration. On remand, the matter must be transferred and the litigation stayed. The parties agreed the Federal Arbitration Act would govern and the act requires a stay. See 9 U.S.C. § 3.[3]

The arbitrator may conclude some or all of the parties' claims are not subject to arbitration. In that circumstance, if a challenged counterclaim is returned to the Law Division, the trial court should allow Minchin to amend his

---

[3] If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[(Emphasis added).]

pleading.  See Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (A party should be provided with an opportunity to amend.).

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo."  Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021).  "New Jersey is a 'fact' rather than a 'notice' pleading jurisdiction, which means that a [litigant] must allege facts to support his or her claim rather than merely reciting the elements of a cause of action." Nostrame v. Santiago, 420 N.J. Super. 427, 436 (App. Div. 2011) (quoting Printing Mart-Morristown, 116 N.J. at 768).  Here, Minchin merely recites the elements of the causes of action in his counterclaims without pleading specific facts to support each counterclaim.  See Printing Mart-Morristown, 116 N.J. at 768 (A party "must plead the facts and give some detail of the cause of action.").

In addition, Rule 4:5-8(a) provides:  "In all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable."  The Rule commands "heightened fraud pleading requirements."  State, Dep't of Treasury, Div. of Inv. ex rel McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 484 (App. Div. 2006).

13

We recognize, as the trial court did, motions pursuant to <u>Rule</u> 4:6-2(e) require pleadings to be "searche[d] . . . in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." <u>Printing Mart-Morristown</u>, 116 N.J. at 746 (quoting <u>Di Cristofaro v. Laurel Grove Mem'l Park</u>, 43 N.J. Super. 244, 252 (App. Div. 1957)). However, as presently stated, Minchin's counterclaims fall short.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1278-25