**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3444-15T1

SPACEAGE CONSULTING CORP.,

    Plaintiff-Appellant,

v.

MARIA VIZCONDE and
HOME BOX OFFICE, INC.,

    Defendants-Respondents.

_____

Argued September 12, 2017 – Decided September 22, 2017

Before Judges Yannotti, Carroll and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1196-14.

Paul A. Clark, Corporate Counsel, argued the cause for appellant (SpaceAge Consulting Corp., attorneys; Mr. Clark, on the briefs).

Colin M. Page argued the cause for respondent Maria Vizconde (Colin M. Page & Associates, attorneys; Mr. Page, on the brief).

Robyn L. Aversa argued the cause for respondent Home Box Office, Inc. (Jackson Lewis, PC, attorneys; Ms. Aversa, of counsel and on the brief; Janet O. Lee, on the brief).

PER CURIAM

The trial court granted summary judgment dismissing plaintiff SpaceAge Consulting Corp.'s action against defendant Maria Vizconde on the basis that the employment agreement between plaintiff and Vizconde was unenforceable because it violated federal law. The court also dismissed plaintiff's complaint against Vizconde's subsequent employer, Home Box Office, Inc. (HBO), for failure to state a claim. Plaintiff's motions for reconsideration, to amend the complaint, and to disqualify the motion judge were thereafter denied. Plaintiff challenges these orders on appeal. For the reasons that follow, we affirm.

I.

Plaintiff is a software services company that trains employees and then assigns them to its clients to provide software development, application integration, and technology training services. Plaintiff is an employer governed by the H1-B non-immigrant worker provisions of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 to § 1537, and its implementing regulations, 20 C.F.R. § 655.700 to 655.855.

In February 2003, the United States Department of Labor (DOL) began investigating plaintiff for allegedly violating federal law governing H-1B employees by not paying wages during their training periods. After the DOL completed its investigation, on March 1, 2006, it issued a determination letter advising that the employment

relationship between plaintiff and its employees, as well as plaintiff's obligation to pay wages to its H-1B employees, began when training commenced. The DOL alleged that plaintiff willfully failed to pay required prevailing wages to its H-1B employees during the training period, as required by 8 U.S.C.A. § 1182(n)(2)(C)(vii), 20 C.F.R. § 655.731(c)(6)(i), and 20 C.F.R. § 655.805(a)(2), and wilfully misrepresented the prevailing wage rate on two labor condition applications, as required by 8 U.S.C.A. § 1182(n)(2)(C)(ii) and 20 C.F.R. §§ 655.730 and 655.805(a)(1), among other violations.

The DOL subsequently discovered that plaintiff was threatening to file lawsuits against H-1B employees if they resigned. On August 4, 2006, the DOL warned plaintiff that it was a violation of 20 C.F.R § 655.731(c)(10)(i) to require H-1B employees to pay a penalty for ceasing employment prior to the dates in their contracts, and a violation of 20 C.F.R. § 655.801(a) to intimidate and threaten H-1B employees.

Plaintiff appealed the DOL's March 1, 2006 determination and requested a hearing. In a November 16, 2006 order, a federal administrative law judge concluded that plaintiff committed the

violations found by the DOL and ordered plaintiff to pay back wages and civil monetary penalties, among other things.[1]

It is within this timeframe that Vizconde's involvement with plaintiff commenced. According to plaintiff, Vizconde was residing in the Philippines in January 2004 when she sent an email to plaintiff stating: "I have read from an advertisement that you are in need of an [information technology] professional and I would like to apply for the said position." On June 3, 2004, Vizconde entered into a written "train-to-hire" employment agreement with plaintiff. The agreement included an Appendix A, which provided in relevant part:

> I, Ms. Maria Vizconde[,] hereby agree to a three year employment with SpaceAge and hence would agree to a three year H1-B visa to be filed for me by SpaceAge. I understand that the three year period begins when I begin work at a project on SpaceAge site or at one of its client sites and it does not include any training period, leave in excess of authorized leave[,] or any other nature of unauthorized absence from work.

The agreement also contained a non-compete clause that prohibited Vizconde from working for a client for whom she rendered services during the contract term and for one year after employment terminated. If Vizconde decided to leave plaintiff or otherwise breached the agreement before completing the contract term, the

---

[1] We take judicial notice of these administrative proceedings.

agreement required her to pay all training and recruitment fees at specified rates, as well as other damages and litigation costs.

Vizconde completed nineteen weeks of training with SpaceAge from February through June, 2006. It is undisputed that she was not paid during this training period.

On June 13, 2006, Vizconde entered into a new train-to-hire employment agreement with plaintiff's "sister company," SpaceLabs Software Services Inc. (SpaceLabs). The new agreement mandated that Vizconde remain employed by SpaceLabs for five years, subjected her to prescribed business losses and training costs should she not do so, and contained a one-year non-compete covenant following termination of her employment. The agreement further specified that it "supersedes all proposals, oral or written, [and] all other communciations between them relating [to the agreement]." SpaceLabs "agree[d] to sponsor Employee['s] [H-1B] visa and bear all legal fees and costs associated therewith[,]" and it applied for a H-1B visa for Vizconde that same month. The application was approved, and Vizconde's H-1B visa became effective in October 2006.

In June 2007, plaintiff entered into a contract with Computer Generated Solutions, Inc. (CGS) for plaintiff to provide information technology professionals to CGS. CGS in turn placed Vizconde at HBO, where she began working as a computer programmer

on July 9, 2007.  The contract between CGS and HBO specified that HBO would not hire Vizconde without CGS's consent within the first year, but was thereafter free to hire Vizconde after the one-year period expired.

In November 2007, HBO contacted Vizconde to discuss her employment options.  In or about April 2008, HBO discussed with Vizconde the possibility of hiring her directly.  Vizconde provided her SpaceLabs contract to HBO.  Consequently, HBO learned that Vizconde was not a CGS employee, but rather a contract employee of SpaceLabs, and it declined to extend an offer to Vizconde at the time.

The situation changed when, toward the end of April, Surender Malhan, the owner of SpaceAge and SpaceLabs, was informed that CGS's contract for Vizconde to work at HBO would end on May 5, 2008.  According to Malhan, he then "told [Vizconde] that her employment will be transferred from SpaceLabs to SpaceAge which as per my understanding of [H-1B] laws requires ending the employment with SpaceLabs and commencing employment with SpaceAge[,] i.e.[,] cancelling the [H-1B] visa from SpaceLabs and obtaining an [H-1B] visa from SpaceAge."  Malhan confirmed in a May 14, 2008 e-mail to Vizconde: "Your employment with SpaceLabs is terminated effective 5/7/08.  Your visa is being transferred

A-3444-15T1

to SpaceAge." Vizconde declined Malhan's offer of employment with SpaceAge by return e-mail.

HBO sought verification that Vizconde was no longer employed by SpaceLabs. On May 13, 2008, Vizconde's attorney provided an opinion letter to HBO, stating: "I have reviewed [Vizconde's] employment contract . . . and have concluded she is currently not employed by SpaceLabs." Counsel continued:

> Given that Ms. Vizconde is not on a paid vacation, and is not assigned to work on any client software projects, the contract states that the "Employee-Employer relationship ceases to exist. If Employee-Employer relationship ceases to exist[,] Employee is free to seek employment with another Company."
>
> Therefore, in light of the quoted language, it is my opinion that Ms. Vizconde is free to pursue employment with your Company.

HBO then offered Vizconde a position, which she accepted.

On March 17, 2014, plaintiff filed a complaint against Vizconde for breach of contract and unjust enrichment, and against HBO for tortiously interfering with plaintiff's contract with Vizconde.[2] Plaintiff sought damages in the amount of $9850 for "training fees" and $72,500 for business damages.

HBO moved to dismiss the complaint for failure to state a claim, pursuant to Rule 4:6-2(e). On July 25, 2014, the motion

---

[2] Plaintiff filed an amended complaint on May 13, 2014, asserting the same causes of action.

judge dismissed plaintiff's complaint without prejudice as to HBO. The judge found the factual allegations pled by plaintiff insufficient to establish a cause of action regarding HBO's alleged interference with plaintiff's contractual relations with Vizconde. The judge reserved plaintiff's right to move to reinstate the complaint against HBO if it could develop additional facts to support its claim.

On June 23, 2015, plaintiff moved to file a second amended complaint alleging additional facts and seeking to reinstate its tortious interference claim against HBO and add new claims against Vizconde. On July 31, 2015, while plaintiff's motion to amend was pending, Vizconde moved for summary judgment. She argued, among other things, that plaintiff's contract was void and unenforceable because it violated H-1B visa violations.

The motion judge agreed that the "SpaceAge/SpaceLab agreements violate[d] [f]ederal H[-1]B [r]egulations[,]" and hence found them unenforceable. On September 4, 2015, the motion judge entered a memorializing order dismissing the complaint. On September 10, 2015, the presiding judge of the Civil Part denied plaintiff's motion to amend, finding it was "now moot in light of the [motion judge's] decision that the contract(s) are void as against public policy since they violate a federal statute."

Plaintiff moved for reconsideration of the September 4 and September 10 orders, and to disqualify the motion judge "pursuant to Rules 1:12 and 1:13 as having expressed bias towards the owner of SpaceAge and having formed an opinion about the honesty and credibility of Malhan as a witness based on alleged facts not before the court." On October 26, 2015, the motion judge denied the disqualification motion and the motion to reconsider the summary judgment order.

On November 20, 2015, the presiding judge of the Civil Part denied the motion to reconsider the September 10 order. On January 7, 2016, plaintiff moved to vacate the September 4, 2015 and October 26, 2015 orders, based on "newly discovered evidence," which the motion judge denied on March 4, 2016. Plaintiff now appeals from the July 25, 2014, September 4, 2015, October 26, 2015, and March 4, 2016 orders.

II.

A.

We first address plaintiff's contention that the motion judge erred by granting summary judgment on its claims against Vizconde. Plaintiff argues, among other things, that the judge erred in viewing the evidence in the light most favorable to Vizconde, and in holding the contract void and unenforceable as contrary to federal law and public policy. We disagree.

We review a grant of summary judgment de novo, observing the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Summary judgment should be granted only if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). If no genuine issue of material fact exists, the inquiry then turns to "whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citations omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Federal law requires an employer to pay wages to an H-1B non-immigrant worker beginning on the date when the worker enters into employment with the employer. 20 C.F.R. § 655.731(c)(6) and (7)(i). The H-1B worker is considered to have entered into employment with the employer "when he/she first makes him/herself

10

available for work <u>or otherwise comes under the control of the</u> <u>employer, such as by waiting for an assignment, reporting for</u> <u>orientation or training, going to an interview or meeting with a</u> <u>customer, or studying for a licensing examination, and includes</u> <u>all activities thereafter.</u>" 20 <u>C.F.R.</u> § 655.731(c)(6)(i) (emphasis added).

Plaintiff provided Vizconde with training services from February 1, 2006 to June 18, 2006. She thus entered into employment with plaintiff, within the meaning of 20 <u>C.F.R.</u> § 655.731(c)(6)(i), as of February 1, 2006. Also, within the training period, she entered into a new employment agreement with SpaceLabs. It is undisputed that Vizconde received no wages during her training period; consequently, both the SpaceAge and SpaceLabs employment agreements violated federal law.[3] We will "refuse to enforce contracts that are unconscionable or violate public policy." <u>Saxon Constr. & Mgmt. Corp.</u> v. <u>Masterclean of North</u> <u>Carolina, Inc.</u>, 273 <u>N.J. Super.</u> 231, 236 (App. Div.), <u>certif.</u> <u>denied</u>, 137 <u>N.J.</u> 314 (1994). "[S]ources of public policy include federal and state legislation." <u>Gamble</u> v. <u>Connolly</u>, 399 <u>N.J.</u>

---

[3] Because we invalidate the employment agreements on this basis, we need not decide whether the contract provisions that purport to assess damages against Vizconde for ceasing employment prior to the expiration of the employment period constitute a penalty and thus also violate 20 <u>C.F.R.</u> § 655.731(c)(10)(i).

A-3444-15T1

Super. 130, 144 (Law Div. 2007). Because both agreements violated federal law, they were void and unenforceable ab initio. Accordingly, summary judgment dismissing all claims against Vizconde was properly granted.

### B.

Plaintiff also argues that the motion judge erred by dismissing its tortious interference claim against HBO pursuant to Rule 4:6-2(e). In addressing this argument, we note that we review de novo Rule 4:6-2(e) motions to dismiss for failure to state a claim. Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div.), certif. denied, 208 N.J. 366 (2011). We consider only "'the legal sufficiency of the facts alleged on the face of the complaint[.]'" Nostrame v. Santiago, 213 N.J. 109, 127 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

The issue is simply "whether a cause of action is suggested by the facts." Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988). We "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Printing Mart-Morristown, supra, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

Rule 4:6-2(e) dismissals "should ordinarily be without prejudice and . . . plaintiffs generally should be permitted to file an amended complaint . . . ." Nostrame, supra, 213 N.J. at 128; accord Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009). Dismissal with prejudice should be limited to situations where the plaintiff's complaint cannot be amended to state a proper claim. See Nostrame, supra, 213 N.J. at 128 (affirming dismissal with prejudice where "plaintiff conceded that he had no further facts to plead").

"A complaint based on tortious interference must allege facts that show some protectable right — a prospective economic or contractual relationship." Printing Mart-Morristown, supra, 116 N.J. at 751. Further, (1) the plaintiff must have a "reasonable expectation of economic advantage"; (2) the interference and harm inflicted must be done "intentionally and with malice," not necessarily "ill will," but in the sense of conduct that is wrongful and "without justification or excuse" under all the circumstances; (3) the interference must have caused a "loss of the prospective gain"; and (4) the loss or injury caused damage. Ibid. (citations omitted). Ultimately, a plaintiff bears the "burden to prove that defendants acted intentionally and wrongfully without justification[.]" Id. at 756. The factors most pertinent to the "malice" standard are: "(a) the nature of

the actor's conduct, (b) the actor's motive, [(c)] the interests sought to be advanced by the actor, and [(d)] the social interest protecting the freedom of action of the actor and the contractual interests of the other."  MacDougall v. Weichert, 144 N.J. 380, 404-05 (1996).

In plaintiff's amended complaint, it averred that "[b]y assigning [] Vizconde to work at [] HBO, HBO would have been on notice that Vizconde was an employee of SpaceAge and under contract to work for SpaceAge for not less than three years."  The motion judge found this allegation insufficient to satisfy the second "malice" prong.

Even if the court erred in reaching that conclusion at this preliminary stage of the proceedings, ultimately we discern no reversible error.  The court dismissed plaintiff's complaint against HBO without prejudice, thereby preserving plaintiff's right to reassert its claim against HBO should it adduce sufficient facts to support it.  Subsequent discovery revealed no evidence that HBO acted maliciously in hiring Vizconde.  Plaintiff did not have a valid agreement with Vizconde because that agreement had been superseded by the SpaceLabs agreement.  HBO was informed that SpaceLabs had terminated Vizconde, and her attorney provided HBO with a letter stating she was thus free to pursue employment with HBO.  In short, plaintiff failed to show that HBO acted with intent

to inflict harm on it without justification or excuse. Moreover, plaintiff is hard-pressed to claim a protectable right in a contract that we have found illegal under federal law.

C.

In its brief, plaintiff argues that the trial court erred in denying its motion to amend the complaint (1) to allege additional facts demonstrating that HBO knew that in hiring Vizconde it was violating the non-compete clause in her contract with plaintiff; and (2) to assert breach of duty of loyalty and tortious interference claims against Vizconde.

As a threshold matter, we conclude that these arguments are not properly before us. As noted, the orders plaintiff identified in its Notice of Appeal were those entered by the motion judge on July 25, 2014, September 4, 2015, October 26, 2015, and March 4, 2016. Importantly, the Notice of Appeal does not include the orders entered by the presiding judge of the Civil Part on September 10, 2015, denying plaintiff's motion to amend, and on November 20, 2015, denying reconsideration of that motion.

Our review of a trial court's decisions is strictly circumscribed by the notice of appeal. R. 2:5-1(f)(3)(A). We review "only the judgment or orders designated in the notice of appeal[.]" 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004) (citing Sikes v. Twp. of

Rockaway, 269 N.J. Super. 463, 465-66 (App. Div.), aff'd o.b., 138 N.J. 41 (1994)). See also R. 2:5-1(f)(3)(A). Stated differently, any arguments raised by plaintiff that fall outside the four corners of the notice of appeal, such as these, fall outside the scope of our appellate jurisdiction in this case, and are therefore not reviewable as a matter of law.

D.

To the extent that we have not specifically addressed them, having reviewed the record, we determine that the remaining issues raised by plaintiff, including its contention that the trial court erred in denying the disqualification motion, lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION