**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1954-17T3

ANNA HALYA SLINKO-
SHEVCHUK,

     Plaintiff-Appellant,

v.

OCWEN LOAN SERVICING,
LLC (as successor-in-interest to
OCWEN FEDERAL BANK, FSB),
a Florida corporation, and INVESTORS
BANK (successor-by-merger with
MARATHON BANKING CORPORATION
d/b/a MARATON NATIONAL
BANK OF NEW YORK), a Delaware
Corporation,

     Defendants-Respondents.

_____

Argued December 11, 2018 – Decided January 14, 2019

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1616-15.

Anna Halya Slinko-Shevchuk, appellant, argued the cause pro se (David J. DiSabato and Lisa R. Bouckenooghe, on the briefs).

Joseph T. Kelleher argued the cause for respondent Ocwen Loan Servicing, LLC (Stradley Ronon Stevens & Young, LLP, attorneys; Joseph T. Kelleher, on the brief).

Anthony C. Valenziano argued the cause for respondent Investors Bank (Sherman Wells Sylvester & Stamelman, LLP, attorneys; Anthony J. Sylvester and Anthony C. Valenziano, on the brief).

PER CURIAM

Plaintiff appeals from Law Division orders dismissing her complaint asserting various claims against defendants concerning a certificate of deposit opened in 1988. For the reasons that follow, we affirm in part, and vacate and remand in part.

I.

In March 1988, plaintiff's father opened a certificate of deposit (CD)[1] at Berkley Federal Savings and Loan Association of New Jersey (Berkley Federal) in both his and plaintiff's names. The terms of the CD stated it "automatically renewed" upon "maturity." Plaintiff's father made periodic withdrawals from

---

[1] While labeled a "Certificate of Deposit," the account holder received a passbook, rather than certificate, upon opening the CD.

the account, with the last entry in the CD passbook occurring on March 21, 1993. On that date, the account balance stood at $70,000, with a new maturity date of September 21, 1993. In August 1993, plaintiff's father died; however, plaintiff did not discover the CD passbook until 2009, when she cleaned out her mother's house.

In June 1993, Ocwen Financial Corporation (Ocwen Financial) acquired Berkley Federal, including its twenty-six branch offices, which it operated until 1995, when it sold twenty-five branches to Sovereign Bank (Sovereign).[2] Ocwen Financial retained a sole branch in Fort Lee. In June 2005, Marathon National Bank (Marathon) acquired the Fort Lee branch, including assumption of the deposit liabilities for the accounts associated with the branch. That same month, Ocwen Financial dissolved. Pursuant to a dissolution plan approved by the Office of Thrift Supervision, Ocwen Financial transferred the remainder of its liabilities – except for the deposit accounts – to a wholly-owned subsidiary corporation, defendant Ocwen Loan Servicing (Ocwen Loan). The record shows

---

[2] Santander Bank, N.A. (Santander) subsequently acquired Sovereign in 2013; however, plaintiff did not name Santander as a party to the litigation, nor did either defendant. The record does not reflect the evidence plaintiff received to convince her not to include Santander as a defendant.

that defendant Investors Bank (Investors) merged with or acquired Marathon in June 2012.

After plaintiff discovered the CD passbook in 2009, she tried to collect the money from the account. Because Berkley Federal no longer remained in business, plaintiff contacted various state agencies in both New Jersey and Florida,[3] and learned the account did not escheat to either state. Plaintiff contacted Marathon, which denied payment, stating it did not maintain the account and had never done so. Plaintiff then contacted Santander; on August 1, 2012, a Santander vice president sent a letter advising that a search of its records "found no evidence" that its predecessor – Sovereign – ever acquired any deposit accounts from Ocwen Financial.[4]

In July 2015, plaintiff filed suit against Investors and Ocwen Loan seeking payment on the CD account. Her complaint alleged claims for breach of

---

[3] The record indicates that a Palm Beach, Florida investment group owned Ocwen Financial.

[4] At a 2017 deposition, another Santander representative testified she had searched available records and also found no evidence that Sovereign ever acquired the subject account.

A-1954-17T3

contract, conversion, breach of the implied covenant of good faith, and violations of the Consumer Fraud Act[5] (CFA).

Following motions to dismiss filed by both defendants, the trial court dismissed the conversion and CFA claims with prejudice, concluding the Uniform Commercial Code[6] (UCC) barred both claims. The trial court later granted both defendants' motions for summary judgment, dismissing plaintiff's remaining claims. This appeal followed.

## II.

We review de novo Rule 4:6-2(e) motions to dismiss for failure to state a claim. Rezem Family Assocs. LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011). We consider only "'the legal sufficiency of the facts alleged on the face of the complaint[.]'" Nostrame v. Santiago, 213 N.J. 109, 127 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

The issue is simply "whether a cause of action is suggested by the facts." Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988). We "'search . . . the complaint in depth and with liberality to ascertain whether the fundament of

---

[5] N.J.S.A. 56:8-1 to -166.

[6] N.J.S.A. 12A:1-101 to :12-26.

a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Printing Mart-Morristown, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

Rule 4:6-2(e) dismissals "should ordinarily be without prejudice and . . . plaintiffs generally should be permitted to file an amended complaint . . . ." Nostrame, 213 N.J. at 128; accord Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009). Dismissal with prejudice should be limited to situations where the plaintiff's complaint cannot be amended to state a proper claim. See Nostrame, 213 N.J. at 128 (affirming dismissal with prejudice where "plaintiff conceded that he had no further facts to plead").

In dismissing plaintiff's CFA claims, the trial court held CFA actions do not apply to banks, which are governed by the UCC. This constituted error, however, since CFA claims may apply to a bank, in addition to a UCC claim. See Estate of Paley v. Bank of Am., 420 N.J. Super. 39, 54 (App Div. 2011) (recognizing "that that in appropriate circumstances, a CFA claim can be brought in addition to a UCC claim, and can be brought against a bank").

To state a claim under the CFA, a plaintiff must prove three elements: 1) unlawful conduct by the defendant; 2) an ascertainable loss by the plaintiff; and

6

3) a causal relationship between the unlawful conduct and the ascertainable loss. Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009).

Plaintiff predicates her CFA claim on "defendants' conduct with respect to the maintenance and accounting for the passbook at issue." Specifically, plaintiff alleges that defendants' continued possession of her funds after her demand for payment constituted an "unconscionable commercial practice" in satisfaction of the CFA.

Ocwen Loan does not control any deposit accounts. It is a loan servicer, not a financial institution. Allowing plaintiff's claim against Ocwen would create the untenable result that any institution could be liable for accounts owned by other banks. Thus, dismissal as to Ocwen Loan was correct. However, in our view, Investor's alleged conduct – continuing to retain plaintiff's funds after failing to produce any evidence of payment – could constitute an unconscionable commercial practice in satisfaction of the first element.

As to the second element, a plaintiff must merely allege a "quantifiable or measurable" loss. Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005). An "estimate of damages, calculated within a reasonable degree of certainty" will suffice to demonstrate an ascertainable loss. Ibid. Here, plaintiff specifically alleged a loss of $70,000 plus interest, thus alleging a quantifiable

A-1954-17T3

loss. Plaintiff also pleaded the third element: "But for [d]efendants' failure to monitor, safeguard, investigate, and/or account for [p]laintiff's CD Account, [p]laintiff would have received the funds in the CD Account upon demand . . . ."

Investors does not argue that the individual elements of a CFA claim do not exist, but instead argues there is "absolutely no evidence demonstrating that Investors Bank maintained the CD account at any point in time." However, at the dismissal stage, we do not consider evidence. Instead, we focus only on the plaintiff's allegations and accept plaintiff's assertions as true. Accordingly, the trial court incorrectly dismissed plaintiff's CFA claim against Investors.

### III.

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. We use the same standard as the trial court. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016); Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). First, we decide if a genuine issue of fact

exists, and if not, we then address the trial court's ruling on the law. <u>Walker v. Alt. Chrysler Plymouth</u>, 216 N.J. Super. 255, 258 (App. Div. 1987).

Plaintiff relies on N.J.S.A. 17:16W-4, which provides in pertinent part:

> The following rules shall apply if a passbook is presented to a financial institution for payment and the financial institution has no record of the account and there is no record of payment of the account to the State pursuant to any applicable escheat or unclaimed property act:
>
> . . . .
>
> c. If the presentation of the passbook is made by the owner, and the presentation is accompanied by a sworn certificate of the owner that the owner never received payment of the account nor transferred the account, there shall be a rebuttable presumption that the account exists and that the financial institution is holding the account for the benefit of the owner.

Initially, as the trial court noted, the record does not show plaintiff satisfied the statutory requirements of N.J.S.A. 17:16W-4(c) by presenting the passbook and a sworn affidavit to defendants. While this precludes plaintiff from receiving the presumption the statute could otherwise provide, the loss of the presumption does not end the analysis of plaintiff's claims.

As for Investors, the record shows a triable question of fact. In 1993, Ocwen Financial acquired the twenty-six branch banks and associated deposits of Berkley Federal, where plaintiff's father opened and maintained the subject

9

CD account. After selling twenty-five of the twenty-six branch banks to Sovereign, in 2005 Ocwen Financial transferred the remaining branch in Fort Lee, and its associated deposits, to Investors. In support of its summary judgment motion, Investors submitted a certification of Sharon Martingale, an assistant vice president with Investors, who represented that when Marathon acquired Ocwen Federal in 2005, all accounts acquired by Marathon were identified on two lists and that her search "of these two lists revealed no account bearing the name of [p]laintiff, or [her] father . . . ." The record does not contain a copy of either list or reflect any information regarding the identity of the person or persons who prepared the lists or any information regarding the procedures employed in preparing the lists.

Because only two entities received deposits from Berkley, the record consists of evidence that Investors may or may not have received the disputed CD account. Thus, an issue of fact remains regarding whether Investors received the subject CD when it purchased the Fort Lee branch from Ocwen Financial.

While the record reflects genuine issues of material fact with regard to Investors's potential liability to plaintiff, we find no such issues with regard to Ocwen Loan, which is not a bank, a savings association, or other of depository

10

institution. Ocwen Loan does not maintain insurance with the FDIC and has never accepted deposit accounts – it operates as a mortgage servicing company. In light of these facts, the record contains no evidence that Ocwen Loan possessed or could have possessed the disputed CD and therefore could be liable to plaintiff under any theory. We therefore affirm the dismissal of all counts against Ocwen Loan.

Affirmed in part, vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1954-17T3