**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4446-17T1

RONALD W. HOROWITZ,

    Plaintiff-Appellant,

v.

RICHARD L. FURMAN, individually
and as an agent of Carroll McNulty Kull,
LLC, CARROLL MCNULTY KULL,
LLC and KENNEDYS CMK LLP,
improperly pled as KENNEDY
LAW CMK LLP,

    Defendants-Respondents.

_____

Argued telephonically April 4, 2019 –
Decided August 26, 2019

Before Judges Yannotti, Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law
Division, Monmouth County, Docket No. L-4274-17.

Ronald W. Horowitz, appellant, argued the cause pro
se.

Kevin Michael Haas, argued the cause for respondents (Clyde & Co US LLP, attorneys; Kevin Michael Haas, of counsel and on the brief).

PER CURIAM

In this dispute about whether one law firm poached another's client, plaintiff Ronald Horowitz, Esq. appeals from the Law Division's April 26, 2018 order granting defendants Richard L. Furman's, Carroll McNulty Kull, LLC's (CMK), and Kennedys CMK LLP's motion under Rule 4:6-2(e) and alternatively for summary judgment under Rule 4:46-1, dismissing plaintiff's second amended complaint. The complaint asserted claims for tortious interference with contractual relations and with prospective economic advantage based on plaintiff's allegation that Furman made numerous false and improper statements to a mutual client's principals regarding plaintiff and his representation of the client. Judge Marc C. Lemieux granted defendants' motion, finding that plaintiff had failed to sufficiently plead his claims or meet his burden on summary judgment. On appeal, plaintiff challenges the judge's ruling, contending that his claims were sufficiently pled and summary judgment was not warranted and prematurely granted. We affirm substantially for the reasons expressed by Judge Lemieux in his oral decision.

The facts taken from the pleadings and motion record, and considered in the light most favorable to plaintiff, are summarized as follows. Plaintiff is an attorney whose practice focuses on freight transportation law. Beginning in 2002, plaintiff regularly represented GMG Transportation, Inc. and GMG Transwest Corp., two freight transportation companies located in New York (collectively GMG). In 2007, GMG retained plaintiff to recover approximately $250,000 from one of its former accounts, PDK Labs, Inc. (PDK). Plaintiff filed suit on GMG's behalf in the United States District Court for the Eastern District of New York and obtained a judgment for $250,000. The default judgment was subsequently vacated and PDK commenced a new action in the Supreme Court of New York against GMG and its principals for conversion of PDK's freight.

At plaintiff's suggestion, in or about January 2015, GMG retained Furman, a member of CMK, who also practiced freight transportation law, as local counsel in the New York action. According to plaintiff, during the next year and a half, Furman attended court conferences and prepared correspondence and pleadings for plaintiff's review. Prior to the trial, Furman obtained consent from plaintiff to participate at trial. The trial began in March 2016 with both plaintiff and Furman participating. The matter was adjourned after its commencement and was scheduled to resume on July 26, 2016.

3

Plaintiff contends that Furman thereafter began to disparage plaintiff. He understood that Furman told GMG that (1) its principals should transfer all assets out of their names unless they terminated GMG's representation by plaintiff and (2) plaintiff should be removed as trial counsel for GMG in all cases. On July 1, 2016, GMG advised plaintiff that he would no longer be representing GMG on any matters, and allegedly stated that their decision was based on Furman's statement that plaintiff's handling of the PDK case would cause GMG and its principals to suffer significant losses.

By letter dated July 7, 2016, John Coviello, GMG's president, informed plaintiff that GMG no longer required his representation and requested that plaintiff forward all files and documents to Furman. Coviello's letter mentioned the PDK claim as well as an unrelated matter involving Bankers Insurance Company, and asked plaintiff to advise if he was handling any other matters on GMG's behalf. As to the insurance matter, Coviello advised that another law firm would be substituting as counsel. On July 8, 2016, Furman advised the judge in the PDK matter that GMG had terminated plaintiff as lead counsel. Plaintiff made unsuccessful attempts to persuade GMG to change its decision, but GMG refused and never retained plaintiff again.

A-4446-17T1

Plaintiff filed a complaint against defendants alleging that they tortiously interfered with his and GMG's contractual relations, explaining that he had a valid contract with GMG for approximately fifteen years and that defendants, knowingly and willfully, intended to harm plaintiff financially by inducing GMG to violate that agreement. Plaintiff next alleged tortious interference with prospective economic advantage, contending that he had a long-time business relationship with GMG which defendants intended to interfere with or destroy, causing damages to plaintiff. Finally, plaintiff claimed defamation, alleging that defendants defamed plaintiff by stating he was incapable of properly and effectively representing GMG, and depicted plaintiff in a false light by suggesting that he had failed to properly represent GMG, which harmed his reputation in his profession. Plaintiff stated that defendants published such statements with reckless disregard for truth, damaging plaintiff's business.

On January 22, 2018, in lieu of filing an answer, defendants moved to dismiss under Rule 4:6-2. Plaintiff filed opposition in which he cited to Nostrame v. Santiago, 213 N.J. 109 (2013) as well as the Rules of Professional Conduct (RPC) to support his position that Furman's actions were improper, and contended that "the causes of action[] are suggested by the facts." Plaintiff also

argued, contrary to defendants' assertion, that his defamation claim was timely filed.

On February 16, 2018, Judge Lemieux dismissed as time-barred plaintiff's defamation claim with prejudice, but granted plaintiff leave to amend his complaint regarding the remaining two claims. Plaintiff was directed to provide more specificity regarding tortious interference with a prospective client and a more detailed, definitive statement regarding his claims.

Plaintiff filed a second amended complaint on March 14, 2018. In it, plaintiff briefly expanded on his claims for tortious interference, contending that Furman violated RPC 8.4(c) and (d) and RPC 7.1(a)(2). Plaintiff added an allegation that Furman advised GMG and its principals to fraudulently transfer assets out of their names and out of PDK's reach as a creditor. Notably, the complaint was silent as to the source of any of plaintiff's allegations about what Furman allegedly told GMG's representatives about plaintiff.

On March 28, 2018, defendants again moved to dismiss, or in the alternative, for summary judgment. In support, they filed certifications from Coviello and Edmund Giza, GMG's former president, in which they denied either being advised by Furman, or discussing with plaintiff, that (1) Furman advised them to transfer their assets out of their names unless they terminated

A-4446-17T1

GMG's representation by plaintiff; (2) Furman advised that plaintiff's handling of the PDK case could cause GMG and its principals to suffer losses; or (3) Furman recommended that plaintiff be terminated as GMG's counsel in all matters.

Furman also filed a certification in which he denied ever advising GMG as alleged by plaintiff in "words, form or substance." Specifically, Furman denied advising Coviello or Giza to transfer assets out of their names and denied recommending that plaintiff be removed as counsel for GMG.

Plaintiff filed a certification in opposition to defendants' motion to dismiss, contesting defendants' undisputed facts and asserting that the matter was not ripe for summary judgment because the record was made up of "vague affidavits of the defendant and his new illicitly obtained client," and the lack of depositions. Plaintiff also contended that Furman tacitly admitted plaintiff's allegations because he never denied them.

On April 26, 2018, the parties appeared for oral argument. Judge Lemieux stated that although he had asked plaintiff to provide more specificity, his second amended complaint contained only one additional sentence. During the argument, plaintiff, who was self-represented, explained to the judge that

"[t]here's no more facts that I have to put . . . in the second amended complaint to make a cause of action for tortious interference."

In his oral decision placed on the record that same day, the judge cited to Nostrame and concluded there could be no cause of action for tortious interference with a contract between a client and his or her attorney, so he dismissed the complaint's first count. He also concluded that plaintiff failed to provide factual support for his claims for tortious interference and failed to supply any evidence to support his various allegations, finding that plaintiff's reliance on his own "personal assertions" was insufficient. The judge rejected plaintiff's assertion that if he were permitted to depose defendants, he would have been able to ascertain the missing facts, explaining that a plaintiff may not use discovery as a tool to create the basis of his allegations.

The judge also noted regarding plaintiff's allegation that Furman advised GMG to fraudulently transfer assets, the second amended complaint "does not indicate where the statement comes from and just relies on a personal assertion that it was, in fact, made." Regarding the allegedly false and misleading statements that defendants made about plaintiff and his services, the judge explained further that plaintiff did not even provide the court with those statements. The judge concluded that plaintiff's second amended complaint was

based on unsupported allegations and should be dismissed with prejudice under Rule 4:6-2(e).

Additionally, the judge rejected plaintiff's argument that summary judgment was inappropriate because "the determination of whether a material fact is in dispute . . . depend[ed] on a credibility evaluation that must be presented to the jury." The judge stated that a motion for summary judgment cannot be defeated by "pulling out any fact in dispute" or by asserting that depositions are needed to prove or disprove his assertions. Plaintiff could not get to the discovery stage before he pled with specificity and particularity defendants' alleged wrongful conduct to support his claims. This appeal followed.

On appeal, plaintiff contends that it was error for the judge to grant defendants' motions because his second amended complaint "sufficiently pled actionable claims," and the matter was not ripe for a summary judgment determination because the record "contained genuine issues of material fact[s]" and discovery had not been completed. We disagree.

We begin by identifying our standard of review. A motion to dismiss under Rule 4:6-2 focuses on the pleadings. Accordingly, under Rule 4:6-2(e), a complaint can be dismissed if the facts alleged in the complaint do not state a

9

viable claim as a matter of law. The standard for determining the adequacy of plaintiff's pleadings is "whether a cause of action is 'suggested' by the facts." Green v. Morgan Props., 215 N.J. 431, 451-52 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). "However, we have also cautioned that legal sufficiency requires allegation of all the facts that the cause of action requires." Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 385 (App. Div. 2010), aff'd and modified, 211 N.J. 362 (2012). In the absence of such allegations, the claim must be dismissed. Ibid.; see also Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012) ("the essential facts supporting plaintiff's cause of action must be presented . . . conclusory allegations are insufficient in that regard").

Here, however, all parties submitted material outside the pleadings and the motion judge considered and relied on those documents and certifications. Whether submitted in support of the Rule 4:6-2(e) motion or considered a separate motion for summary judgment, the same standard applied. See R. 4:6-2; R. 4:46. The standard for summary judgment is whether the moving parties have established that there are no genuine disputes as to any material facts, and, if so, whether the facts, viewed in the light most favorable to the non-moving party, entitles the moving parties to judgment as a matter of law. R. 4:46-2(c);

Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

A party opposing summary judgment does not create a genuine issue of fact simply by offering a sworn statement. Carroll v. N.J. Transit, 366 N.J. Super. 380, 388 (App. Div. 2004). "'[C]onclusory and self-serving assertions' in certifications without explanatory or supporting facts will not defeat a meritorious motion for summary judgment." Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009); accord Brae Asset Fund, LP v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999).

What is required of the party opposing summary judgment is affirmative evidence that is competent, credible, and shows that there is a genuine issue for trial. "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Hoffman, 404 N.J. Super. at 425-26). Summary judgment will not be precluded by "[b]are conclusory assertions" lacking factual support, Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012), self-serving statements, Heyert v. Taddese, 431 N.J. Super. 388, 413-14 (App. Div. 2013), or disputed facts "of an

insubstantial nature." Miller v. Bank of Am. Home Loan Servicing, LP, 439 N.J. Super. 540, 547 (App. Div. 2015) (quoting Brill, 142 N.J. at 523).

Ordinarily, summary judgment is inappropriate prior to the completion of discovery. Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003). However, "[a] motion for summary judgment is not premature merely because discovery has not been completed, unless plaintiff is able to 'demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington, 359 N.J. Super. at 496).

When reviewing orders concerning motions to dismiss for failure to state a claim or motions for summary judgment, we use the same standard as the trial court and review the decisions de novo. Davis, 219 N.J. at 405; Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014). Moreover, in considering questions of law, our review is plenary. Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135-36 (2017).

Whether defendants' motion in this case should have been denied depended upon the sufficiency of plaintiff's pleadings to set forth a cause of action against defendants and whether he sustained his burden on summary

judgment to establish a genuine issue as to a material fact or that additional discovery was warranted. We conclude from our de novo review that plaintiff did not meet his burden.

In order to state a claim of tortious interference with contractual relations, a plaintiff must plead facts sufficient to establish: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." Dello Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003).

Generally, this tort cannot apply to a claim of interference with an existing relationship between an attorney and client and instead "must technically be analyzed in accordance with the principles" applicable to the tortious interference with a prospective contractual relationship. Nostrame, 213 N.J. at 121. "[B]oth of these torts have as their focus the means by which one has interfered with the contractual relationship, whether that contractual relationship is existing or prospective." Ibid. The interference must not only be "intentional," but also "improper." Id. at 122 (citing Restatement (Second) of Torts § 766 (Am. Law Inst. 1979)).

"The tort of interference with a business relation or contract contains four elements: (1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages." DiMaria Constr., Inc. v. Interarch, 351 N.J. Super. 558, 567 (App. Div. 2001), aff'd o.b., 172 N.J. 182 (2002).

The elements for a claim of tortious interference with prospective economic of advantage are defined as follows:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.
>
> [Nostrame, 213 N.J. at 122 (quoting Restatement (Second) of Torts § 766B (Am. Law Inst. 1979)).]

In Nostrame, the plaintiff filed a complaint against the defendant, both of whom were attorneys, after the plaintiff's client terminated his representation in favor of the defendant. Id. at 114-15. The plaintiff alleged tortious interference

and that the defendant had induced the client to discharge plaintiff.  Id. at 115.

The defendant filed a motion to dismiss under Rule 4:6-2(e).  Id. at 116.

In its opinion affirming the reversal of the denial of the motion, which resulted in the dismissal of the complaint, the Supreme Court addressed the circumstances under which a discharged attorney may sustain a cause of action against a successor attorney for tortious interference with prospective economic advantage. .  Id. at 120-21.  According to the Court, when considering such claims, a trial judge must evaluate whether the means the second attorney used were improper or wrongful.  Id. at 123.  In doing so, the Court recognized the unique relationship between an attorney and client and the expanded definition of improper conduct that applies to claims between attorneys based on tortious interference.

The Court stated the following:

> Our analysis of the well-established elements that are required to state a claim for tortious interference is informed by our recognition that the attorney-client relationship is terminable at will and by our strong protections for clients who exercise their free will to retain and to discharge counsel.  It is further guided by the recognition that competition among attorneys, although not precisely the same as competition found in other business pursuits, is not prohibited as long as it is conducted in adherence to the RPCs and is not otherwise wrongful or improper.  In that context, we are confident that there will be only rare circumstances in

15

which an attorney will behave in a manner that could translate into a claim by another attorney for tortious interference.

[Id. at 128-29.]

Addressing "the universe of behaviors that would qualify as improper or wrongful," the Court explained that attorneys' conduct in relation to their competition as compared to "ordinary business competitors," attorneys are subject to "a further series of limitations." Id. at 126, 129. The Court noted that attorneys are not only "prohibited from making statements about another attorney that are defamatory or that amount to fraud," but also "may not make misrepresentations, may not use tactics to pressure or harass, may not, except in defined circumstances, make comparisons, may not disparage other attorneys, and may not offer promises about results." Id. at 126. Wrongful acts include fraud, defamation, deceit, intimidation, and misrepresentation, but do not include solicitation or "sneaky" or "underhanded" acts. See id. at 124 (citations omitted). Attorneys also "may not use tactics to pressure or harass . . . disparage other attorneys, [or] . . . offer promises about results." Id. at 126.

Applying these principles, the Court found that the plaintiff's complaint stated only that he had a contingent fee agreement with a client, that the client arranged for a meeting and did not appear, and that she thereafter discharged the

plaintiff and asked him to send her file to her new lawyer.  Ibid.  The Court held that the claim was not supported by any facts that suggested the means the defendant used were improper or wrongful.  Id. at 127.  It stated "[b]ecause plaintiff's complaint is based on nothing more than his unsupported suspicion that his client would not have discharged him absent some wrongful or improper means, [the complaint] fails to state a claim upon which relief can be granted."  Id. at 129.

In reaching its decision, the Court noted "that our rules demand [the wrongful conduct] be pleaded with specificity[.]"  Ibid.  The Court explained the need for specificity, and directed that all future actions be pled with "specificity and particularity."  Ibid.  It stated as follows:

> Because each of these grounds is specific and particular, because we recognize that the paramount right to be protected is the right of the client to choose counsel freely, and because we do not intend to countenance litigation between successive counsel that is unsupported by facts known at the time of filing, we direct that any complaint filed in the future based on such a cause of action plead the facts and circumstances that constitute the allegedly wrongful means with specificity and particularity.

> [Ibid.]

The Court required that a plaintiff specifically plead with particularity the facts known at the time of filing and warned against relying upon the hope that

17

discovery would flush out those facts later. The Court stated that since it was undisputed the plaintiff

> had no further facts to plead, instead filing the complaint in the hope that he could use the tools of discovery to uncover evidence of wrongdoing. . . . dismissal with prejudice was entirely appropriate lest his former client and her newly-chosen attorney be subjected to a mere fishing expedition, a remedy that would raise the specter of chilling any client's exercise of the free choice to select counsel that we have accorded them.

> [Id. at 128.]

With these guiding principles in mind and applying our de novo standard of review, we conclude plaintiff's complaint was properly dismissed with prejudice. As Judge Lemieux found, plaintiff's second amended complaint failed to set forth with specificity any factual basis for the most significant allegation about defendants' alleged wrongful conduct.

The complaint stated inter alia that that Furman "suggested, induced and/or recommended to GMG" that if it did not fire plaintiff, its principals' personal assets were in jeopardy, inferring that GMG would lose the PDK case because of plaintiff's inability to properly represent GMG. It also stated that GMG "advised plaintiff that [its] decision was based on learning from . . . Furman that plaintiff's handling of the PDK case would cause GMG and its

principals to suffer huge losses." Finally, plaintiff also alleged that Furman advised GMG, Coviello, and Giza "to fraudulently transfer assets out of their names and out of PDK's reach" in violation of the Court's RPCs. However, plaintiff did not allege that such statements were made to him or in his presence, nor did he divulge how they were otherwise made known to him. In any event, and significantly, we conclude the sparse allegations did not amount to the necessary specific and particular pleading of wrongful conduct required by Nostrame.

Plaintiff's complaint was instead "based on nothing more than his unsupported suspicion that his client would not have discharged him absent some wrongful or improper means, [and therefore] fails to state a claim upon which relief can be granted." Id. at 129. Plaintiff did not plead specifically or with particularity that Furman engaged in fraud, misrepresentation, deceit, or any other wrongful or unethical means. He alleged only that Furman "communicated" with GMG about plaintiff's representation; that Furman instructed GMG's principals to transfer assets out of their names; and that Furman suggested that plaintiff be removed as trial counsel. These bald assertions do not include the elements of or amount to the establishment of any alleged wrongful acts. Moreover, they were based solely on an alleged

19

conversation with GMG's principals in which they described their conversation with Furman—a conversation which Furman, Coviello, and Giza deny in sworn affidavits took place. The fact that the complaint referred to various RPCs based upon Furman allegedly telling the former clients to transfer assets to avoid the impact of a possible judgment in the PDK matter, did not provide the specific factual support required to maintain an action for wrongful, intentional and improper conduct between plaintiff and defendants.

Even if plaintiff's complaint could be considered sufficient, plaintiff failed to meet his burden on summary judgment. Once defendants' motion was converted to one for summary judgment, or considered as one from the outset, and supported by certifications from Furman, Coviello, and Giza denying that Furman made any of the specific statements and confirming that they never spoke to plaintiff about the alleged statements, plaintiff was obligated to come forward with some credible evidence that the statements were made as alleged in the complaint. He did not.

Instead, plaintiff claimed only that the allegations of the second amended complaint were sufficient and its allegations were "true and accurate," but gave no explanation for the basis or source of the disputed statements made to Coviello or Giza. He only made a bald assertion that further discovery would

20

reveal such information about the "vague affidavits of the defendant and his new illicitly obtained client."

Like the plaintiff in Nostrame, plaintiff speculated that other than Furman's wrongful conduct, there could be no other reason for GMG terminating its relationship with plaintiff. In doing so, he made a vague reference to an unspecified telephone call with Coviello, that was not mentioned in his pleadings, in which he claims Coviello "expressed" that if plaintiff was not replaced with Furman, their "personal assets were in jeopardy if they did not transfer them out of their names." Plaintiff further certified that "[t]here is no question that he stated that to me. There should be no question that [they] would not have made such an abrupt and shocking decision to terminate my representation if fear, of a significant magnitude, was not instilled in [them]. There is no other credible explanation."

The only other parties with knowledge of the alleged conversations—Furman, Coviello, and Giza—denied in sworn affidavits that any of the conversations took place, and plaintiff failed to show that depositions or any other discovery of these same or any other individuals would elicit contradicting or additional information to support his claims. "A party opposing summary judgment on the ground that more discovery is needed must specify what further

discovery is required, rather than simply asserting a generic contention that discovery is incomplete." Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App. Div. 2007) (quoting Auster, 153 N.J. Super. at 56). Here, plaintiff failed to demonstrate that additional discovery was warranted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4446-17T1