**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4272-19

BRIAN DELANEY,

     Plaintiff-Appellant,

v.

FIRST HOPE BANK, N.A.
and DONALD SOMMA,

     Defendants-Respondents.

_____

Argued November 1, 2021 – Decided January 5, 2022

Before Judges Fasciale and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0032-18.

Peter R. Bray argued the cause for appellant (Bray & Bray, LLC, attorneys; Peter R. Bray, on the briefs).

Gregory F. Kotchick argued the cause for respondents (Durkin & Durkin, LLC, attorneys; Gregory F. Kotchick, of counsel and on the brief).

PER CURIAM

Plaintiff Brian Delaney has been involved in lengthy litigious battles involving his membership in CC Holdings, LLC (CCH), which he and his three partners, Owen Dykstra, Douglas Dkystra, and Dimitrios Prassas, established to develop a ninety-two-acre, mixed-use, real estate project (the project) in Sparta. Pertinent to the present matter, CCH borrowed $6.1 million from First Hope Bank, N.A. (the Bank) to finance the project, for which plaintiff and his partners personally guaranteed. He sued the Bank and Donald Somma, the Bank's Chief Executive Officer, in a first amended four-count complaint charging them with misconduct in their involvement with the project and its litigation.

Plaintiff appeals from the Law Division's July 15, 2020 order dismissing count four of the first amended complaint with prejudice, as well as the March 24, 2020 order denying his motion for reconsideration to vacate the parts of the January 15, 2019 order dismissing the first amended complaint's counts one, two, and three, and "all claims arising out of allegations that [p]laintiff was fraudulently induced into the settlement by way of the appraisal by actions of [d]efendants are dismissed [with prejudice]." For the reasons that follow, we affirm.

A-4272-19

I.

To give context to our opinion, we briefly summarize the background and prior litigation involving CCH and the Bank. In doing so, we refrain from detailing the numerous procedural twists and turns during that prolonged litigation which are not particularly relevant to this opinion.

In April 2014, CCH executed and delivered to the Bank a $6.1 million promissory note to develop the project. To secure the loan, plaintiff and his three CCH members were required to personally guarantee payment. On November 7, 2014, they each executed a general release in favor of the Bank, its successors, assigns, officers, directors, employees, and/or agents, from any and all claims, including but not limited to those involving any interest held in CCH and CCSV, LLC (CCSV).[1] The release was given as part of a related agreement, as partial consideration for the Bank agreeing to accept $498,192.40 less than the amount due and owing on certain loans on which plaintiff and his three partners guaranteed.

---

[1] CCSV, which included all CCH members except plaintiff, was formed to purchase a foreclosure judgment held by Sovereign Bank on the property CCH intended to use for the project and manage its operations. Delaney v. Dykstra, Nos. A-1115-16, A-3246-16, A-5523-17 (App. Div. Aug. 12, 2019) (slip op. at 4-5).

3

Sometime before or in 2015, plaintiff filed three separate Chancery Division lawsuits in Sussex and Morris Counties against CCH, the Dykstras, and Prassas (CCH Litigation), relating to various claims concerning his ouster as a CCH member due to his alleged obstructionist actions. The actions were consolidated, and the parties eventually reached a settlement that was placed on the record before the trial court. Under the settlement terms, plaintiff agreed to sell his one-third interest in CCH for $2.8 million to the other members, with payment to be made in installments. In addition, CCH agreed to exercise its best efforts to remove plaintiff as a guarantor of the Bank loan.

Plaintiff's refusal to execute the written settlement agreement resulted in an October 14, 2016 court order enforcing the settlement agreement. This court denied his appeal of the order. Delaney, Nos. A-1115-16, A-3246-16, A-5523-17 (slip op. at 4).

While the appeal was pending, plaintiff filed another lawsuit in February 2017, against CCH, the Dykstras, and Prassas alleging they breached the settlement agreement, including their failure to use their best efforts to secure his release as a guarantor of the Bank loan. The trial court subsequently entered temporary restraints discharging a notice of lis pendens on the development of the project filed by plaintiff and stayed the lawsuit until the pending appeal was

4

decided. The court later ordered that his interest in CCH was terminated because his interest in CCH was fully paid-off in accordance with the settlement agreement. The Bank loan remained outstanding.

To further fuel the parties' disputes, Owen[2] filed a separate lawsuit in Sussex County (Stock litigation) against plaintiff alleging misappropriation of investment funds and securities. Plaintiff later subpoenaed the Bank requesting bank account records and various entities owned by Owen, a director of the Bank. The trial court ordered production of certain documents but declined his demand to find the Bank in contempt or to impose sanctions. His renewed request seeking sanctions against the Bank was also denied. Prior to trial, the parties placed a confidential settlement on the record fully resolving all the issues in that matter.

The present matter commenced in January 2018, when plaintiff filed a four-count complaint against defendants alleging their misconduct as non-parties in the CCH and Stock litigations. Prassas promptly moved to intervene and dismiss the complaint under Rule 4:6-2(e), for failure to state a cause of action recognized at law. On March 29, the court granted intervention, but

---

[2] We refer to Owen by his first name to avoid confusion with co-defendant Douglas Dykstra. We mean no disrespect.

A-4272-19

limited the other relief sought. The court stayed counts one (fraudulent inducement/fraudulent misrepresentation), two (tortious and malicious interference with contractual and economic expectations), and four (breach of the covenant of good faith and fair dealing in allowing plaintiff to be released from the Bank loan), pending the CCH litigation appeal. The court, however, dismissed without prejudice count three (fraudulent concealment and fraudulent misrepresentation).

On May 30, 2019, the CCH Loan was paid in full, and the underlying collateral was discharged or released, including plaintiff's personal guarantee. After the stay was vacated,[3] plaintiff filed a first amended complaint in September 2019. Defendants filed a Rule 4:6-2(e) motion to dismiss the complaint. On January 15, 2020, the court entered an order granting defendants' motion and dismissed all four counts of the amended complaint without prejudice.

Plaintiff filed a timely motion for reconsideration of the order. On March 24, the court granted him partial relief. The court restored count four of the first amended complaint, "to the extent [that] it is not based on alleged breach of [the CCH litigation] settlement agreement where defendants were not a party to same

---

[3] The record on appeal does not include the order vacating the stay.

A-4272-19

or related to a claim previously dismissed with prejudice, or claims previously waived by settlement agreement between parties." The court did not vacate its order dismissing the other three counts without prejudice, stating on the record plaintiff made no showing "it was arbitrary or unreasonable or . . . palpably unreasonable nor did [the court] fail to appreciate the . . . facts or [competent] evidence," as required by D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).

On May 6, prior to discovery, defendants moved for summary judgment dismissal of count four with prejudice. The court granted the motion in a July 15 order, providing in its statement of reasons:

> The only contractual relationship which existed between [p]laintiff and [d]efendants arose through the CCH [l]oan; the CCH [l]itigation settlement did not include either [d]efendant. Thus, if [d]efendants are to be found to have violated the duty of good faith and fair dealing for not using their best efforts to release [p]laintiff from the loan, such an obligation must arise from the CCH [l]oan. The [c]ourt concludes such a showing cannot be sustained.
>
> . . . .
>
> . . . Defendants never had any contractual obligation to consider an early release of [p]laintiff from the loan. Clearly, absent such a circumstance, there can be no violation of the duty of good faith and fair dealing by [d]efendants for failing to release [p]laintiff from the loan early.

7

. . . .

Plaintiff further argues that the motion must be denied because it is premature.

. . . .

The [c]ourt finds this argument no more persuasive than the last. In order for the instant summary judgment motion to be denied on the ground that it is premature, [p]laintiff must demonstrate that there is a likelihood that further discovery will supply evidence of a contractual obligation on the part of [d]efendants to release [p]laintiff from the loan early. Plaintiff makes no such assertion. Rather, [p]lainitff only asserts that discovery is necessary to probe the knowledge of its officers as to the [d]efendants' good faith. This is insufficient.

Lastly, . . . [p]laintiff placed substantial reliance on Ramapo Bank v. Bechtel, 224 N.J. Super. 191 (App. Div. 1988) for the proposition that . . . [d]efendants had to act with good faith. The [c]ourt finds that case distinguishable[,] as it involved a claim of legal fraud which works to automatically "discharge the guarantor from his liability on the guaranty." Id. at 197-98. Moreover, the fraud alleged in that case went directly to the loan agreement, while the loan agreement here does not contain the obligation that [p]laintiff alleges [d]efendants violated.

II.

On appeal, plaintiff argues the following points for our review:

8

POINT I

THE DISMISSAL OF THE FIRST AMENDED COMPLAINT APPLIED IMPROPER PLEADING STANDARDS AND REACHED INCORRECT CONCLUSIONS ABOUT THE SUFFICIENCY OF THE PLEADED CLAIMS.

POINT II

THE APPLICATION FOR RECONSIDERATION SHOULD HAVE BEEN GRANTED BECAUSE THE COURT IMPROPERLY CONCLUDED THAT ITS PRIOR APPLICATION OF AN UNDULY RESTRICTIVE PLEADING STANDARD AND ITS MISREADING OF THE CLAIM DID NOT WARRANT A REINSTATEMENT OF THE ENTIRE FIRST AMENDED COMPLAINT.

POINT III

THE GRANT OF SUMMARY JUDGMENT WAS FLAWED BECAUSE THE MOTION JUDGE BECAME A FACT FINDER AND PREMATURELY CONSIDERED THE APPLICATION PRIOR TO ANY DISCOVERY BEING CONDUCTED.

POINT IV

THE GRANT OF SUMMARY JUDGMENT VIOLATED THE LAW OF THE CASE DOCTRINE. (THIS POINT WAS NOT EXPRESSLY RAISED BELOW).

A-4272-19

A.

We first address defendant's challenge to the trial court's Rule 4:6-2(e) dismissal of counts one, two, and three without prejudice. In reviewing the grant of a motion to dismiss a complaint for failure to state a cause of action de novo, we apply the same standard under the rule that governed the motion court. Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010). We consider only "'the legal sufficiency of the facts alleged on the face of the complaint[.]'" Nostrame v. Santiago, 213 N.J. 109, 127 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

The issue is simply "whether a cause of action is suggested by the facts." Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988). We "'search[] . . . the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Printing Mart-Morristown, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). In examining the relevant factual allegations in plaintiff's complaint, we treat them as true and extending to plaintiff all favorable inferences. See Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 625 (1995) (citation omitted).

In count one, plaintiff alleged he learned that defendants fraudulently misrepresented the value of his ownership interest in CCH and failed to disclose that Owen withheld from the trial court in the CCH litigation an unidentified appraisal of the project valuing the project more than defendants claimed. The court properly applied Rule 4:6-2(e) to dismiss count one.

The fraud allegations failed to identify "particulars of the wrong, with dates and items if necessary," R. 4:5-8(a), and, thus, count one should be dismissed as "not set[ting] forth with specificity . . . the elements of legal or equitable fraud," State, Dep't of Treasury, Div. of Inv. ex. Rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 484 (App. Div. 2006) (quoting Levinson v. D'Alfonso & Stein, 320 N.J. Super. 312, 315 (App. Div. 1999)). Even though plaintiff claimed that Somma made misrepresentations during the CCH Litigation, he failed to allege specifically what the misrepresentations were and when they were made. He also failed to specifically allege plans and offers for the project and contracts with third-party developers were withheld by defendants and why they were withheld. As the court reasoned:

> Count [o]ne lacks . . . specificity; it speaks in generalized terms. For example, [p]laintiff alleges that "information" he received, which induced him to forego obtaining a documented interest, was false, but [p]laintiff fails to allege what this information is, where it was received from, or when it was received. . . .

11

Furthermore, [p]laintiff does not provide any factual support for this claim beyond the allegation that this "information" was "false." It cannot be said that such an allegation is plead with specificity. Additionally, [c]ount [o]ne alleges that [d]efendants knew [Owen] was "wrongfully withholding plats which depicted a development that made [t]he [p]roject much more valuable than previously discussed." Again, [p]laintiff fails to allege specifics . . . . Therefore, [c]ount [o]ne of the [f]irst [a]mended [c]omplaint is dismissed without prejudice.

[(citations omitted).]

Moreover, we agree with the court that plaintiff is collaterally estopped from claiming he was fraudulently induced to settle the CCH litigation when defendants failed to disclose to him that Owen had an appraisal attributing a substantially higher value to the project than other valuations. Collateral estoppel arises "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012) (alteration in original) (quoting Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982)). The party against whom the doctrine is asserted must have been a party to the earlier proceeding. Ibid. In the CCH litigation, the trial court rejected plaintiff's argument that CCH, the Dkystras, and Prassas defrauded him about the project's value given he had his own expert appraiser

12

opining a different project value. Thus, he cannot sue defendants in this action for fraudulently withholding an appraisal that was previously determined to be of no merit in demonstrating fraudulent inducement to settle the CCH litigation.

Counts two and three both raise claims of tortious interference. Count two alleged defendants interfered with plaintiff's contracts or economic interests. Count three alleged defendants interfered and wrongfully failed to comply with the subpoena served upon the Bank in the Stock litigation to further Owen's plan to gain an upper hand in the litigation that inured to his benefit. In dismissing these counts, the court again properly applied Rule 4:6-2(e).

Establishing "the tort of interference with a business relation or contract [requires] four elements: (1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages." DiMaria Const., Inc. v. Interarch, 351 N.J. Super. 558, 567 (App. Div. 2001). The elements for a claim of tortious interference with prospective economic advantage are:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

[Nostrame, 213 N.J. at 122 (quoting Restatement (Second) of Torts § 766B (Am. Law Inst. 1979)).]

To adequately plead a claim of fraudulent concealment, a plaintiff must establish:

(1) [t]hat defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;

(2) [t]hat evidence was material to the litigation;

(3) [t]hat plaintiff could not reasonably have obtained access to the evidence from another source;

(4) [t]hat defendant intentionally withheld, altered[,] or destroyed the evidence with purpose to disrupt the litigation;

(5) [t]hat plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

[Rosenbilt v. Zimmerman, 166 N.J. 391, 406-07 (2001).]

In dismissing count two, the court ruled:

Plaintiff's allegations are . . . insufficient to support a claim for tortious interference with an existing contract or economic advantage.  Plaintiff pleads no allegations

14

concerning the existence of a valid contract or economic relationship which [d]efendants interfered with. Moreover, [p]laintiff has not plead any facts indicating [d]efendants interfered with any contract or economic relationship "intentionally and without justification or excuse." <u>Printing Mart</u>, 116 N.J. at 751. Plaintiff merely points to [d]efendants' allegedly wrongful conduct in relation to the subpoena. The overwhelming majority of allegations in [c]ount [t]wo concern [d]efendants' conduct in relation to the subpoena. <u>See</u> First Amended Comp[laint] at ¶¶140-63

Addressing both counts two and three, the court reasoned:

[They] are also dismissed as far as they can be read as stating a claim for [d]efendants' failure to comply with the subpoena. Defendants argue that there is no cause of action for such conduct. Plaintiff does not dispute this argument and cites no case supporting the existence of such a cause of action. Likewise, the [c]ourt has not found any indication that an independent cause of action exists for failure to comply with a subpoena. Therefore, [c]ounts [t]wo and [t]here are dismissed as far as they can be understood as pleading a claim for failure to comply with the subpoena.

As to just count three, the court further reasoned:

The only factual allegation in the complaint concerning . . . [d]efendants' alleged misrepresentations in connection with the subpoena, claim[s] that "[the Bank] would thereafter produce documents, contend it had satisfied its obligations under [t]he [s]ubpoena[]" and later concede it hac not produced all the documents. First Amended Comp[laint] at ¶ 51. This sole allegation is not enough to establish the elements of the cause of action, nor does it satisfy the particularity requirement of fraud claims.

15

> Insofar as [c]ount [t]hree alleges a fraud claim against [d]efendants for their alleged efforts to aid [d]efendants, this claim fails for lack of specificity. Plaintiff alleges that [the Bank] failed to comply with the subpoena by restricting access to "financial information" to secure an "advantage" for [Owen]. Plaintiff does not specifically allege what "financial information" was withheld and how it would prove advantageous to Dykstra to withhold it. First Amended Compl[aint] at ¶ 67. Plaintiff further alleges that [the Bank] attempted to prevent disclosure of information indicating the loan was improperly administered but fails to state what actions [the Bank] took in preventing such disclosure. Similar to [c]ount [o]ne, [c]ount [t]hree also alleges that [the Bank] "concealed" and "misrepresented" "information," but fails to specif[y] what "information" was "concealed" or how it was "misrepresented." Id. at ¶ 70.

We see no fault in the court's reasoning. Plaintiff failed to identify the existence of a valid contract or economic interest with which defendants interfered as alleged in count two. As to count three, he failed to allege the evidence that defendants wrongfully withheld was material to the Stock litigation or that the information sought could not have been obtained elsewhere. Plaintiff also did not claim that defendants' alleged actions were done with the intent to disrupt the Stock litigation or to induce his reliance for his detriment. See Jewish Center of Sussex Cty v. Whale, 86 N.J. 619, 624 (1981) ("A misrepresentation amounting to actual legal fraud consists of a material

16

representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment.").

B.

We next turn to plaintiff's contention that the trial court erred in denying his motion to reconsider dismissal of counts one, two, and three without prejudice. He argues the court misread the first amended complaint and misapplied the law in dismissing the counts. We disagree, concluding the court did not abuse its discretion. See Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015); Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). In seeking reconsideration, plaintiff failed to cite any misapplication of the law or new case law that the court failed to consider, nor did he raise any additional facts that were not previously before the court.

C.

Plaintiff's final contention is that the court erred in granting summary judgment dismissal of the count four. Citing Seidenberg v. Summit Bank, 348 N.J. Super. 243, 263 (App. Div. 2002), he argues his general allegation of defendants' bad faith is sufficient to survive dismissal and discovery should be

17

allowed to substantiate his claim. The court, he argues, ignored the fact that Owen, as the Bank's director, agreed to use his best efforts to secure plaintiff's release from the loan guarantee, inferring the Bank had no policy prohibiting such releases, there was precedent for it granting such releases, and the Bank had the discretionary right to grant the release, calling into question whether its refusal was arbitrary, capricious, or unreasonable. He also argues the court violated the law of the case doctrine when it disregarded the ruling by a prior trial court in the March 24, 2020 reconsideration order reinstating count four on the basis that Ramapo Bank provides precedential support for plaintiff's claim that the Bank breached its obligation to act and deal in good faith. We are unpersuaded.

An appellate court reviews a trial court's decision on a summary judgment motion de novo. Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 599 (App. Div. 2014). We utilize the same standard as the motion court and consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

It is well settled that "an implied covenant of good faith and fair dealing" inheres in "every contract in New Jersey." Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997); see also Restatement (Second) of Contracts § 205 (Am. Law Inst. 1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). The implied covenant signifies that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Sons of Thunder, 148 N.J. at 420 (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)). A party breaches the implied covenant when it exercises its contractual functions "arbitrarily, unreasonably, or capriciously" and with an "improper motive." Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001). "Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance." Ibid.

The only contractual relationship between plaintiff and defendants arose through the Bank loan. The CCH litigation settlement required the Dykstras and Prassas—not defendants—to use their best efforts to release plaintiff from the loan. Defendants were only obligated to release plaintiff upon full payment of the loan, which they did on May 30, 2019. Because defendants never had a

contractual obligation to release plaintiff from the loan early, they could not have violated a duty of good faith and fair dealing for not doing so. Granting defendants summary judgment on count four was correct.

With respect to plaintiff's reliance on the law of the case doctrine, the argument was not raised before the motion court and thus should not be considered on appeal because it does not "'go to the jurisdiction of the trial court or concern matters of great public interest.'" Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). Nevertheless, plaintiff's reliance on Ramapo Bank, which was the court's basis for reinstating count four on reconsideration to substantiate his argument, is misplaced because there the claim involved legal fraud, which automatically "discharge[d] the guarantor from his liability on the guaranty." 224 N.J. Super. at 197-98. Additionally, the fraud alleged in Ramapo Bank went directly to the loan agreement, and here, the guaranty does not obligate the Bank to release plaintiff from his guarantee before the loan is fully satisfied. As we have concluded, summary judgment was appropriate.

To the extent we have not addressed any remaining issues, we find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4272-19